LILLIAN FULLER, Employee, Plaintiff v. MOTEL 6 (Self-Insured), Employer; GALLAGHER BASSETT SERVICES, Servicing Agent, Defendant

No. COA99-281

(Filed 7 March 2000)

**1. Workers' Compensation— credibility—determination by full Industrial Commission**

Even though N.C.G.S. § 97-85 places the ultimate fact-finding function with the full Industrial Commission and not the hearing officer, the Commission did not err in a workers' compensation case by accepting the credibility determination of a deputy commissioner because the Commission is not precluded from accepting the deputy commissioner's credibility determinations if it elects to do so.

**2. Workers' Compensation— disability—burden on employee**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff-employee failed to prove she was unable to earn the same wages she earned before her neck injury and that she is not entitled to a presumption of disability upon proof she sustained an injury as a consequence of an accident arising out of and in the course of her employment, because: (1) there is competent evidence to support the findings that plaintiff was released four days after her injury to return to work without restrictions, and she was capable of earning her

regular wages and performing her regular duties; and (2) the employee has the burden of proving a disability exists.

### 3. Workers' Compensation— occupational disease—carpal tunnel syndrome—ganglion cyst

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff-employee did not meet her burden of proving she sustained a compensable occupational disease since there was competent evidence to show that plaintiff's carpal tunnel syndrome and ganglion cyst were not due to causes and conditions which were characteristic and peculiar to her employment as a housekeeper, and which excluded all ordinary diseases of life to which the general public was equally exposed.

Appeal by plaintiff from Opinion and Award filed 11 December 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 4 January 2000.

*Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Mallory A. Taylor, for defendant-appellee.*

GREENE, Judge.

Lillian Fuller (Plaintiff) appeals from a 11 December 1998 Opinion and Award of the North Carolina Industrial Commission (Commission) concluding Plaintiff's left carpal tunnel syndrome and ganglion cyst were not occupational diseases and Plaintiff had not proved she had a disability as a consequence of a 15 July 1996 injury by accident arising out of and in the course of her employment with Motel 6 (Employer).

The record reveals on 30 November 1994, Plaintiff began working as a housekeeper for Employer. Plaintiff testified she squeezes a cleaning spray bottle with her left hand 20-to-30% of each day, but Curtis Rufty (Rufty), a manager for Employer, testified it constituted about only 5% of a housekeeper's time on the job.

On 9 May 1996, Plaintiff was seen by James Barber, M.D. (Dr. Barber) at Doctor's Urgent Care Center (DUCC) for a wrist strain and a mass on her left wrist. Dr. Barber noted Plaintiff's "fingers [had] the crooked appearance of [a] patient with rheumatoid arthritis," Plaintiff

had a wrist strain due to repetitive motion at work, but the left arthritic cyst was not work related.

Dr. Barber referred Plaintiff to Edward L. Hines, M.D. (Dr. Hines), an orthopedic surgeon who, on 12 June 1996, removed Plaintiff's ganglion cyst and performed a carpal tunnel release on her left wrist. This surgery kept Plaintiff out of work for two weeks until 27 June 1996, when she was released to return to work without restriction.

On 15 July 1996, Plaintiff slipped and fell on both of her hands while cleaning a bathtub at work. Plaintiff returned to DUCC that afternoon complaining of injuries to both of her wrists and her right breast as a result of the fall. Dallas A. Smith, M.D. (Dr. Smith) diagnosed bilateral contusions and sprains to both of Plaintiff's wrists, with the left wrist worse than the right. Dr. Smith released Plaintiff to return to work, but he told her not to use her left arm.

Dr. Hines examined Plaintiff on 19 July 1996, found Plaintiff's healing progress was satisfactory for one month after surgery, and told her she could anticipate four-to-six months of progressive improvement. Dr. Hines released Plaintiff to work without restriction during this visit.

On 29 July 1996, Plaintiff returned to DUCC complaining of left thumb and arm pain. Dr. Smith released her to return to work with the restrictions of no lifting of greater than ten pounds and no repetitive use of her left arm. On 1 August 1996, Plaintiff told her supervisor James Gross (Gross) that her pain continued to worsen and she could not handle it anymore. Gross told Plaintiff, if she could not work, she should go home. Plaintiff remains out of work.

On 2 August 1996, Plaintiff returned to DUCC with complaints of left arm pain. Dr. Smith released her to work with the aforementioned restrictions and later referred her to Mark W. Roy, M.D. (Dr. Roy) for a neurological consultation. During her visit with Dr. Roy, Plaintiff complained of left-hand pain and pain radiating up to her elbow ever since the surgery on her ganglion cyst, and reported bilateral arm pain and neck pain ever since she sustained her fall at work. Plaintiff, however, did not tell Dr. Roy she had prior problems with arthritis, chronic pain in her shoulder for five years, or any family history of arthritis.

Dr. Roy diagnosed Plaintiff with carpal tunnel syndrome, median neuropathy, and spondylitis, a bone degeneration in her neck. He testified Plaintiff's problems were probably caused by her 15 August

1996 fall, "because she did not have any complaints before that," and the fall probably exacerbated her spondylitis. Dr. Roy further testified Plaintiff's ganglion removal exacerbated or contributed to her problems because "before she had the ganglion cyst operated on[,] she did not have the left hand pain and afterwards she did."

Dr. Hines testified the exact cause of ganglion cysts has never been substantiated. There are a "myriad" of causes for carpal tunnel syndrome, such as "ganglions, . . . trauma, . . . rheumatoid arthritis[,] . . . [and] hypothyroidism." He noted Plaintiff had hypothyroidism, but stated if someone is "adequately managed" medically for the problem, "they really don't have hypothyroidism." Dr. Hines, in his continuing testimony, stated he did not have an opinion as to whether Plaintiff's job duties made her more likely to be at an increased risk to develop carpal tunnel syndrome or a ganglion cyst as anyone else, but said "[t]here are people who, for various reasons, are probably predisposed to having carpal tunnel syndrome, and in all likelihood repetitive, heavy use of that hand makes them even more likely to have it." Dr. Hines further testified that usually people who have a carpal tunnel release surgery "recover pretty normal strength and function[, and] it's rare that they have much disability and very often no long-term permanent disability."

Waiving oral arguments, the full Commission, in its Opinion and Award, made the following pertinent findings of fact and conclusions of law:

### FINDINGS OF FACT

. . . .

2. The [P]laintiff began working as a housekeeper for [Employer] on 30 November 1994. Her job . . . required constant use of both hands. Although the [P]laintiff testified that she spent twenty to thirty percent of her time at work constantly squeezing a spray bottle with her left hand, [Rufty] . . . testified that squeezing a spray bottle accounted for only five percent of the time on the job. The Deputy Commissioner found the testimony of [Rufty] more credible on this issue due to the parties' descriptions of the job duties. Therefore, the Full Commission declines to reverse the credibility determination by the Deputy Commissioner and finds that five percent of the [P]laintiff's time on the job was spent squeezing a spray bottle with her left hand.

. . . .

11. At the time the [P]laintiff quit working for [Employer], Dr. Hines . . . had examined her and released her to return to work without restrictions. However, Dr. Smith . . . released her to return to work lifting no greater than ten pounds and no repetitive use of the left arm. The Commission gives more weight to the opinion of Dr. Hines than to Dr. Smith because of Dr. Hines' expertise and because he had treated her wrist problem extensively. Therefore, the Commission finds that, at the time she quit working for [Employer], the [P]laintiff was capable of earning her regular wages and performing her regular duties.

. . . .

17. In light of Dr. Hines [sic] limited information about the [P]laintiff's job duties and the equivocal testimony he gave regarding any increased risk to the [P]laintiff, the [P]laintiff has failed to present sufficient evidence to establish by its greater weight that her job duties with [Employer] placed her at an increased risk of contracting carpal tunnel syndrome or a ganglion cyst than the general public.

18. The exact etiology of a ganglion cyst has not been substantiated . . . . Dr. Hines . . . noted that [Plaintiff] had some thyroid problem that could be contributory to carpal tunnel syndrome. He provided no further opinion regarding the causation of the [P]laintiff's ganglion cyst. However, Dr. Barber's notes reflect, and the Commission finds, that the ganglion cyst was not work-related.

. . . .

21. . . . Dr. Roy's opinion was based upon the mistaken impression that [Plaintiff's] wrist and arm pain did not begin until sometime after the surgery in June of 1996. He was apparently not aware that [she] had carpal tunnel syndrome prior to the surgery and that she had a carpal tunnel release, only that she had the ganglion cyst removed. Therefore, the [P]laintiff failed to prove by the greater weight of the evidence that her median nerve damage was caused by the 15 July 1996 fall.

22. There was insufficient medical evidence to establish that the [P]laintiff's 15 July 1996 fall caused any injury to her wrists.

23. . . . [Plaintiff's] 15 July 1996 fall exacerbated [her] preexisting spondylitic changes in her neck.

24. Although the [P]laintiff was able to work her regular duties in August 1996, as of 23 September 1996, when Dr. Roy first saw the [P]laintiff, she was only able to work with restrictions. . . .

. . . .

27. The [P]laintiff failed to establish that she made a reasonable effort to secure other employment.

28. The [P]laintiff failed to establish that it would have been futile to have attempted to look for work.

. . . .

CONCLUSIONS OF LAW

1. The [P]laintiff's left carpal tunnel syndrome and ganglion cyst were not occupational diseases . . . . She is therefore not entitled to any compensation . . . for her carpal tunnel syndrome and ganglion cyst. . . .

2. On 15 July 1996, the [P]laintiff sustained an injury by accident arising out of and in the course of her employment with [Employer]. . . .

3. At the time the [P]laintiff quit her job with [Employer] and up until September 1996, she was capable of earning her regular wages and performing her regular duties. Around September 1996, the [P]laintiff was capable of returning to work with restrictions. However, she did not return to work in any capacity, did not make a reasonable effort to obtain gainful employment and did not prove it would have been futile to seek employment. She has failed to prove that she was unable to earn the same wages she earned before the injury. . . . Therefore, she is not entitled to any disability benefits . . . [for the injury to her neck].

4. The [P]laintiff is entitled to have [Employer] provide all medical compensation arising from the 15 July 1996 injury by accident. . . .

The issues are whether: (I) the Commission may accept the credibility determinations of a deputy commissioner when the Commission waives oral arguments; (II) an employee is entitled to a presumption of disability upon proof she sustained an injury as a consequence of an accident arising out of and in the course of her

employment; and (III) there is competent evidence to support the Commission's findings of fact and conclusions of law that Plaintiff did not meet her burden of proving she sustained a compensable occupational disease.

I

**[1]** Plaintiff argues that *Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998), precludes the Commission from accepting the credibility determinations made by a deputy commissioner. We disagree.

As "the sole judge of the credibility of the witnesses and the weight to be given their testimony," *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965), N.C. Gen. Stat. "§ 97-85 places the ultimate fact-finding function with the Commission—not the hearing officer," *Adams*, 349 N.C. at 681, 509 S.E.2d at 413. This ultimate determination may be made "from a cold record or from live testimony." *Id.* "In reviewing the findings found by a deputy commissioner . . . , the Commission may review, modify, adopt, or reject the findings of fact found by the hearing commissioner," *Watkins v. City of Wilmington*, 290 N.C. 276, 280, 225 S.E.2d 577, 580 (1976), and if the full Commission rejects the deputy commissioner's findings, it is "not required to demonstrate . . . 'that sufficient consideration was paid to the fact that credibility may be best judged by a first-hand observer of the witness when that observation was the only one,' " *Adams*, 349 N.C. at 681, 509 S.E.2d at 413 (citation omitted). We do not read *Adams* as precluding the Commission from accepting the deputy commissioner's credibility determinations, if it elects to do so.

In this case, the Commission elected in several instances to accept the deputy commissioner's credibility determinations and this was within their province.

II

*Neck Injury*

**[2]** Plaintiff argues that once the Commission determined she had sustained an injury by accident to her neck on 15 July 1996, arising out of and in the course of her employment, a "presumption of disability attaches to her and she has demonstrated that she is disabled" within the meaning of the Workers' Compensation Act (Act). Once this presumption is established, Plaintiff continues, "the burden shifts to the employer-defendant to show that [P]laintiff is employable." We disagree.

An employee is entitled to compensation under the Act upon a showing she has sustained an injury by accident arising out of and in the course of her employment *and* she has sustained a disability as a consequence of that injury.[1] *Rhinehart v. Market*, 271 N.C. 586, 588, 157 S.E.2d 1, 2 (1967). The employee has the burden of proving each of these essential elements. *Loflin v. Loflin*, 13 N.C. App. 574, 577, 186 S.E.2d 660, 662, *cert. denied*, 281 N.C. 154, 187 S.E.2d 585 (1972). A disability exists if the injury results in an "incapacity . . . to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C.G.S. § 97-2(9) (1999). The employee is not entitled to a presumption of disability upon proof she has sustained some injury by accident arising out and in the course of her employment.[2]

In this case, the Commission concluded Plaintiff had "failed to prove that she was unable to earn the same wages she earned before the injury." This conclusion is supported by findings by the Commission. The Commission found Plaintiff was released, four days after her 15 July 1996 injury, "to return to work without restrictions" and that she "was capable of earning her regular wages and performing her regular duties." There is competent evidence in the record to support these findings and we are bound by them. *Watkins v. City of Asheville*, 99 N.C. App. 302, 303, 392 S.E.2d 754, 756, *disc. review denied*, 327 N.C. 488, 397 S.E.2d 238 (1990) (appellate court bound by findings if supported by competent evidence). Thus, Plaintiff has not met her burden of showing she sustained a disability as a consequence of her 15 July 1996 injury.

III

*Wrist Injuries*

[3] Plaintiff finally argues she has met her burden of proving she sustained a compensable occupational disease. We disagree.

[T]here are three elements necessary to prove the existence of a compensable "occupational disease": (1) the disease must be

---

1. If the injury sustained is within the schedule of injuries listed in section 97-31, there is no requirement there be a showing of a disability. *Hollman v. City of Raleigh*, 273 N.C. 240, 250, 159 S.E.2d 874, 881 (1968).

2. We acknowledge the law which provides that " 'once the *disability* is proven, there is a presumption that it continues until "the employee returns to work at wages equal to those he was receiving at the time his injury occurred." ' " *Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994) (citations omitted) (emphasis added). In this case, Plaintiff did not prove her disability.

characteristic of a trade or occupation, (2) the disease is not an ordinary disease of life to which the public is equally exposed outside of the employment, and (3) there must be proof of causation, i.e., proof of a causal connection between the disease and the employment.

*Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 105-06 (1981). Plaintiff bears this burden of proof. *Morrison v. Burlington Industries*, 304 N.C. 1, 12, 282 S.E.2d 458, 466-67 (1981).

In this case there is conflicting evidence as to whether Plaintiff's ganglion cyst and carpal tunnel syndrome are compensable occupational diseases. The Commission resolved this conflict and determined by the entry of findings of fact, Plaintiff did not prove her carpal tunnel syndrome and ganglion cyst were due to causes and conditions which were characteristic of and peculiar to her employment with Employer and which excluded all ordinary diseases of life to which the general public was equally exposed. We are bound by those findings, as there is competent evidence in the record to support them. *Clark v. American & Efird Mills*, 82 N.C. App. 192, 196, 346 S.E.2d 155, 157, *disc. review denied*, 318 N.C. 413, 349 S.E.2d 591 (1986). As these findings support the Commission's conclusions, we affirm the Opinion and Award of the Commission.

Affirmed.

Judges LEWIS and EDMUNDS concur.