BRENDA D. HOBBS, Employee/Plaintiff v. CLEAN CONTROL CORPORATION, Employer, and ZURICH-AMERICAN INSURANCE, CO., Carrier/Defendants

No. COA01-1451

(Filed 3 December 2002)

**1. Workers' Compensation— occupational disease—carpal tunnel syndrome**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee did not suffer a compensable occupational disease based on the fact that her work did not place her at an increased risk of contracting carpal

HOBBS v. CLEAN CONTROL CORP.

[154 N.C. App. 433 (2002)]

tunnel syndrome, because: (1) the testimony of plaintiff's expert regarding whether plaintiff's job placed her at an increased risk of developing carpal tunnel syndrome was linked to the specific job description provided by plaintiff, and the issue of whether that job description was more credible than the one given by various other witnesses was to be resolved by the Commission; and (2) the Commission's finding is supported by competent evidence in the record.

2. **Workers' Compensation— occupational disease—carpal tunnel syndrome—aggravation of pre-existing tendency**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee did not suffer a compensable occupational disease even though plaintiff contends her employment may have aggravated a pre-existing tendency arising out of her earlier employment or medical problems if this employment did not cause her carpal tunnel syndrome, because plaintiff did not prove that her employment placed her at a greater risk than the general public of contracting carpal tunnel syndrome and thus did not establish that it was an occupational disease.

Appeal by plaintiff from opinion and award entered 6 August 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 September 2002.

*Law Offices of George W. Lennon, by George W. Lennon and Michael W. Ballance, for plaintiff-appellant.*

*Lewis & Roberts, P.L.L.C., by Timothy S. Riordan and Jeffrey A. Misenheimer, for defendant-appellees.*

BIGGS, Judge.

Plaintiff (Brenda Hobbs) appeals from an Opinion and Award of the North Carolina Industrial Commission denying her claim for workers' compensation. For the reasons discussed below, we affirm.

Plaintiff was employed by defendant Clean Control in January, 1997, to conduct sales demonstrations for customers at a Sam's Warehouse Club store. The demonstrations generally required her to apply substances such as motor oil or vinegar to various items, and then to demonstrate how defendants' cleaning products would remove the applied substance.

Shortly after she began work for defendants, plaintiff consulted Dr. Kolkin for arm and elbow pain. In August, 1997, Dr. Kolkin performed surgery to remove a tumor in a nerve of her right elbow. Although she was not diagnosed as suffering from carpel tunnel syndrome at that time, four or five months later plaintiff again experienced pain in her hands, which Dr. Kolkin did diagnose as carpel tunnel syndrome. In September, 1998, plaintiff had carpel tunnel syndrome release surgery; however, she continued to experience pain after the surgery. Plaintiff's last day of work for defendants was 16 August 1998.

On 27 August 1998, plaintiff filed an Industrial Commission Form 18, seeking workers' compensation benefits for carpel tunnel syndrome. Defendants denied her claim, at which time she sought a hearing before the Industrial Commission. Following a hearing before a deputy commissioner on 30 July 1999, an Opinion and Award was issued on 16 June 2000, denying plaintiff's claim. Plaintiff then appealed to the Full Commission. On 6 August 2001, the Commission issued its Opinion and Award, affirming the deputy commissioner's denial of plaintiff's claim. Plaintiff appeals from the Opinion and Award of the Full Commission.

## Standard of Review

Appellate review of decisions of the Industrial Commission is "limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Bailey v. Western Staff Services*, 151 N.C. App. 356, 359, 566 S.E.2d 509, 511 (2002) (quoting *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000)). The Commission's findings of fact are conclusive on appeal if supported by competent evidence, notwithstanding evidence that might support a contrary finding. *Hedrick v. PPG Industries*, 126 N.C. App. 354, 484 S.E.2d 853, *disc. review denied*, 346 N.C. 546, 488 S.E.2d 801 (1997). Further, the Commission is the sole judge regarding the credibility of witnesses and the strength of evidence. *Effingham v. Kroger Co.*, 149 N.C. App. 105, 561 S.E.2d 287 (2002). The Commission's conclusions of law are subject to *de novo* review. *Grantham v. R.G. Barry Corp.*, 127 N.C. App. 529, 491 S.E.2d 678 (1997), *disc. review denied*, 347 N.C. 671, 500 S.E.2d 86 (1998).

HOBBS v. CLEAN CONTROL CORP.

[154 N.C. App. 433 (2002)]

I.

[1] Plaintiff argues first that the Commission erred by concluding that plaintiff did not suffer a compensable occupational disease because her work did not place her at an increased risk of contracting carpel tunnel syndrome. Plaintiff contends that the Commission reached its conclusion by "improperly substitut[ing] its opinion for that of the medical experts and ignor[ing] the unanimous [opinion] of [plaintiff's] doctors." We disagree.

N.C.G.S. § 97-53(13) (2001) provides that an occupational disease may include:

Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

To establish the existence of a compensable occupational disease, plaintiff "must show: (1) the disease is characteristic of individuals engaged in the particular trade or occupation in which the claimant is engaged; (2) the disease is not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there is a causal relationship between the disease and the claimant's employment." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 354, 524 S.E.2d 368, 371, *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000). Plaintiff has the burden of proving all three elements by a preponderance of the competent evidence. *Gibbs v. Leggett and Platt, Inc.*, 112 N.C. App. 103, 434 S.E.2d 653 (1993). "[T]he first two elements are satisfied if . . . the employment exposed the worker to a greater risk of contracting the disease than the public generally." *Rutledge v. Tultex Corp.*, 308 N.C. 85, 93-94, 301 S.E.2d 359, 365 (1983). Evidence that the plaintiff's employment exposed her to a greater risk than that of the general public is the *sine qua non* of a workers' compensation claim for an occupational disease:

[if the] Commission's finding that plaintiff was not at a greater risk of contracting the disease than the general public is supported by competent evidence, . . . [t]his finding alone supports the conclusion that plaintiff did not prove the presence of a compensable occupational disease.

*Futrell v. Resinall Corp.*, 151 N.C. App. 456, 459, 566 S.E.2d 181, 183, *disc. review allowed*, 356 N.C. 300, 570 S.E.2d 505 (2002) (evidence failed to show employment exposed plaintiff to greater risk than general public of contracting carpel tunnel syndrome). *See also Fuller v. Motel 6*, 136 N.C. App. 727, 735, 526 S.E.2d 480, 485 (2000) (where evidence conflicted as to whether claimant's carpal tunnel syndrome was "due to causes and conditions which were characteristic of and peculiar to her employment" the Commission is permitted to "resolve[] this conflict").

In the instant case, plaintiff contends that the Commission "ignored competent medical evidence" elicited from Dr. Kolkin, and alleges that his testimony was "completely uncontradicted" regarding whether plaintiff's employment placed her at a greater risk than the general public of developing carpel tunnel syndrome. Plaintiff fails to acknowledge that Dr. Kolkin's opinion regarding this issue was expressly made contingent upon the accuracy of plaintiff's own description of her job duties. Plaintiff reported to Dr. Kolkin that she used the spray bottles "constantly" and "continuously," and the testimony plaintiff elicited from Dr. Kolkin was based on the assumption that the job was one requiring her to "constantly" spray bottles of cleaning fluid:

> DR. KOLKIN: Again, reading from my notes, "She comes in with a new problem involving the right upper extremity. For 1 ½ years, she has done a new job as a demonstrator of various cleaning products. *She constantly uses a spray bottle* in the right hand. . . .

> DR. KOLKIN: I can say that the symptoms she was having in her right hand, *from the information I received*, were probably strongly impacted by the type of work *that she described as doing.*

> . . . .

> PLAINTIFF'S COUNSEL: Let me ask you to *assume . . . that her work involved . . . repetitive use of the hands* and wrists . . . do you have an opinion . . . whether more likely than not her job with [defendant] was a substantial contributing factor in her development of these symptoms[?]

> DR. KOLKIN: From the information provided, *one needs to be clear as to frequency of one's performing the job.* So, again, *from the*

*information provided at this point,* I would think there is a greater probability than not that the work was a significant contributing factor to development of right carpal tunnel syndrome. (emphasis added)

However, other evidence was presented at the hearing that the spraying and wiping generally took about a minute, followed by five to ten minutes of a sales pitch extolling the product. Defendant's sales trainer, as well as her supervisor, each testified that plaintiff's job required her to grip and spray from a spray bottle approximately ten to sixteen times per hour, depending on which product plaintiff was demonstrating, for a total of one or two minutes of gripping and spraying hand activity per hour. When defendant asked Dr. Kolkin to assume that plaintiff was only required to spray the cleaning products 10 or 15 times an hour, his opinion changed:

DEFENDANT'S COUNSEL: And the words [using spray bottles] "constantly and [on a] continuous basis" came from [plaintiff]?

DR. KOLKIN: Yes.

. . . .

DEFENDANT'S COUNSEL: Okay. And your opinion that her job at Clean Control contributed to her right carpal tunnel syndrome is based on the information that you have concerning her job description to you at this point, is that correct?

DR. KOLKIN: That's correct. . . .

DEFENDANT'S COUNSEL: Okay, I'm going to ask you to *assume that [plaintiff] . . . [would] spray* the 'Odoban' cleaner *. . . a maximum of about twelve, maybe sixteen sprays per hour . . .* [and that] the Odoban was about seventy percent of her work. *. . . To demonstrate [other products] she used her hands roughly thirty seconds or less . . .* [a]nd again, the rest of the five to eight minutes was spent selling or talking . . . and the [other cleaner] that she demonstrated . . . had an average demonstration of about eight to ten minutes. And again, she *used her hands about one and a half to two minutes of that ten minutes. . . . Based on those assumed facts,* doctor, do you have an opinion as to whether that job, as I've described it to you . . . significantly contributed to or caused her right carpal tunnel syndrome [?]

. . . .

Dr. Kolkin: *That would be unlikely.*

. . . .

Defendant's Counsel: Doctor, would you consider using a spray bottle a maximum of twelve to sixteen times per hour, . . . continuous or constant?

Dr. Kolkin: No.

. . . .

Defendant's Counsel: Doctor, *based on the lengthy hypothetical* question that I gave you before, . . . is it fair for me to summarize your opinion that *you do not think that her job as described in that hypothetical question placed her at an increased risk* over the general public of developing carpel tunnel syndrome?

Dr. Kolkin: *That's correct.* (emphasis added)

Thus, Dr. Kolkin's expert medical opinion regarding whether or not plaintiff's job placed her at an increased risk of developing carpel tunnel syndrome was inextricably linked to the specific job description provided. When he was asked to consider plaintiff's job description as "constant" or "continuous" spraying and other repetitive hand motions, he believed her employment exposed her to an unusual risk of carpel tunnel syndrome. However, when Dr. Kolkin was asked to consider the testimony of others that plaintiff only sprayed 12 to 16 times per hour, his opinion changed completely. Thus, the issue to be resolved by the Industrial Commission was which job description was more credible. It is well established that "[t]he Commission is the sole judge of the weight and credibility [to be given] testimony, and its findings may be set aside on appeal only if there is a complete lack of evidence to support them." *Thompson v. Tyson Foods, Inc.*, 119 N.C. App. 411, 414, 458 S.E.2d 746, 748 (1995). We are bound by the Industrial Commission's conclusion, that plaintiff's job did not place her at an increased risk for carpel tunnel syndrome, since this finding is supported by competent evidence in the record. Accordingly, this assignment of error is overruled.

## II.

[2] Plaintiff alleges that, even if her employment for defendant did not cause her carpel tunnel syndrome, that it may have aggravated a pre-existing tendency arising out of her earlier employment or medical problems, and thus was a compensable occupational disease.[1] We disagree.

An illness is not an occupational disease unless the aggravation of an underlying or pre-existing condition occurs in the context of employment that places her at an increased risk of contracting the disease. *Pitillo v. N.C. Dept. of Environmental Health and Natural Resources*, 151 N.C. App. 641, 566 S.E.2d 807 (2002) (claimant's psychological illness not a compensable occupational disease, despite being caused in part by workplace job performance review, where evidence failed to establish that conditions of employment placed her at any increased risk for emotional problems); *Norris v. Drexel Heritage Furnishings, Inc.*, 139 N.C. App. 620, 534 S.E.2d 259 (2000) (although plaintiff's fibromyalgia was caused or aggravated by her employment with defendant, it was not an occupational disease because evidence did not show that plaintiff's employment with defendant placed her at an increased risk of contracting or developing fibromyalgia as compared to the general public not so employed). Because plaintiff did not prove that her employment placed her at a greater risk than the general public of contracting carpel tunnel syndrome, she has not established that it was an occupational disease. This assignment of error is overruled.

We conclude that the Industrial Commission's findings are supported by competent evidence, and that the findings justify its conclusions. Accordingly, the Industrial Commission is

Affirmed.

Judges GREENE and WYNN concur.

---

1. Plaintiff's prior employment history included factory sewing, housekeeping, nurses' aide, and warehouse employment. She had previous medical treatment for bursitis of her shoulder, high blood pressure, fibromyalgia, injuries suffered in several motor vehicle accidents, numbness in her hands, chronic pain syndrome, and hysteric personality.