DONALD GRANTHAM, PLAINTIFF v. CHERRY HOSPITAL, EMPLOYER, SELF-INSURED, DEFENDANT

No. 8910IC867

(Filed 3 April 1990)

**Master and Servant § 69 (NCI3d)— workers' compensation—payment of consumer debt not rehabilitative service**

N.C.G.S. § 97-29 of the Workers' Compensation Act does not authorize the Industrial Commission to order an employer to pay a totally disabled employee's common consumer debts as a "rehabilitative service."

**Am Jur 2d, Workmen's Compensation §§ 340, 363.**

APPEAL by defendant from award filed on 1 June 1989 by the North Carolina Industrial Commission. Heard in the Court of Appeals on 6 March 1990.

This workers' compensation case was first tried on 3 March 1988 with Deputy Commissioner Richard B. Ford presiding. An opinion and award for the plaintiff were filed on 24 August 1988. Defendant appealed in timely fashion to the Full Commission, which affirmed and adopted as its own the deputy commissioner's opinion and award with one commissioner dissenting. Defendant appealed to this court.

It is undisputed that on 25 November 1984 Donald Grantham suffered a closed-head injury, an accident that arose out of and occurred in the course of his employment with Cherry Hospital. Mr. Grantham is now permanently and totally disabled from his injuries. He suffers from expressive dysphasia (extreme difficulty in speaking), hemiparesis (weakness) of his upper and lower right extremities, attention and memory lapses, depression and "persistent cognitive, psychological and behavioral difficulties."

The plaintiff claims that prior to his injury he worked two jobs, and that as a result of his injury and disability, his and his wife's combined income fell for over two years by nearly $1,100 a month. Mr. Grantham did not begin receiving disability retirement income until December 1987. The record indicates that as a consequence of his injuries, certain family debts were incurred totaling $27,865.07. These debts were as follows:

GRANTHAM v. CHERRY HOSPITAL

[98 N.C. App. 34 (1990)]

| | |
|---|---:|
| 1. Wayne Oil Company | $969.69 |
| 2. Wayne County Tax Collector's Office | $267.80 |
| 3. Howard Brothers Food | $83.87 |
| 4. Heilig-Meyers (furniture) | $3,469.00 |
| 5. State Employee's Credit Unit | $16,592.82 |
| 6. Musgrave Tire and Gas | $428.30 |
| 7. Pate's Service Station and Garage | $533.59 |
| 8. Babysitter (138 wks. @ $40/wk) | $5,520.00 |
| TOTAL | $27,865.07 |

None of this debt involved medical expenses attributable to the plaintiff's injuries.

It is also clear from the record that through his own highly commendable efforts and the work of his neuropsychiatrist, Dr. Thomas Gualtieri, Mr. Grantham has begun to rehabilitate himself. These efforts at self-help probably have saved the State of North Carolina the expense of placing Mr. Grantham in a rehabilitation residence, which could cost as much as $30,000 a month. The doctors who treated Mr. Grantham immediately after his injury recommended his placement in an inpatient unit.

At the hearing before the deputy commissioner, Dr. Gualtieri testified that payment of the debts and relief from the burden and worry of the indebtedness would be "the best thing for Donald's rehabilitation that we could do." The debt and resulting depression were interfering with Mr. Grantham's rehabilitation, Dr. Gualtieri said.

After the hearing, Deputy Commissioner Ford made the following findings and conclusions of law:

9. The Plaintiff, as of the date of the hearing on March 3, 1988 had incurred a family indebtedness of $27,865.07 as the result of his injury, his inability to earn income and the mental, psychological and physical disabilities which he suffers.

10. This indebtedness is of great concern to the Plaintiff, causes him stress, and effects his mental and emotional well-being and is efficient in preventing his recovery from the mental and psychological depression and illness from which he suffers as a result of the injury on November 24, 1984.

. . . .

12. While there is no cure for the Plaintiff's physical condition, the payment of his indebtedness will tend to effect a cure and give him relief from the mental and emotional depression and illness from which he suffers as a result of this injury on November 25, 1984 and the resulting indebtedness; and is a reasonable and necessary rehabilitative service and care for the Plaintiff's wellbeing.

. . . .

14. Further the Plaintiff is entitled to be relieved from the indebtedness . . . in an amount not to exceed $27,865.07 as a rehabilitation service which may reasonably be required to effect . . . a cure or give the Plaintiff relief from the injury related psychological and emotional problems caused by the brain damage resulting from the injury occurring on November 25, 1984.

*James T. Bryan, III, for employee-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Victor H. E. Morgan, Jr., for the appellant.*

ARNOLD, Judge.

In this case we must decide if N.C. Gen. Stat. § 97-29 of the Workers' Compensation Act authorizes the Industrial Commission to order an employer to pay an employee's common consumer debts as a "rehabilitative service." N.C. Gen. Stat. § 97-29 requires that "[i]n cases of total and permanent disability, compensation, including reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and *other treatment or care or rehabilitative services* shall be paid for by the employer during the lifetime of the injured employee" (emphasis added). N.C. Gen. Stat. § 97-29 (Supp. 1989). (In the original statute, the word between care and rehabilitative services is "of." This is a misprint. It should be "or." *See* 1973 N.C. Sess. Laws ch. 1308, § 2. The mistake has been corrected in the statutory supplement that we cited.)

A decision of the Industrial Commission will not be overturned on appeal absent an abuse of discretion. "The test for abuse of discretion is whether a decision 'is manifestly unsupported by reason,' or 'so arbitrary that it could not have been the result of a reasoned decision' (citations omitted)." *Little v. Penn Ventilator Co.*, 317 N.C. 206, 218, 345 S.E.2d 204, 212 (1986). The purpose of the review-

## GRANTHAM v. CHERRY HOSPITAL

[98 N.C. App. 34 (1990)]

ing court is not to substitute its judgment in place of the decision maker, but rather to insure that the decision, in light of the factual context in which it is made, could be the product of reason. *Id.*

We recognize the general principle that the provisions of the Workers' Compensation Act should be construed liberally so that benefits are not denied to an employee based on a narrow or strict interpretation of the statute's provisions. *See Petty v. Transport, Inc.*, 276 N.C. 417, 173 S.E.2d 321 (1970). We also realize that this case arises in an important and dynamic area of workers' compensation law—defining the parameters of employer responsibility for employee rehabilitation. As one commentator has noted:

> It is too obvious for argument that rehabilitation, where possible, is the most satisfactory disposition of industrial injury cases, from the point of view of the insurer, employer and public as well as of the claimant. Apart from the incalculable gain to the worker himself, the cost to insurers and employers of permanent disability claims under a properly adjusted system is reduced; and, so far as the public is concerned, it has been said on good authority that for every dollar spent on rehabilitation by the Federal Government it has received back ten in the form of income taxes on the earnings of the persons rehabilitated. (citation omitted) It is probably no exaggeration to say that in this field lies the greatest single opportunity for significant improvement in the benefits afforded by the workmen's compensation system.

Larson, 2 Workmen's Compensation Law § 61.25 (1987). Furthermore, Mr. Grantham's request falls into one of the most controversial corners of rehabilitation compensation—providing services of a *non-medical nature* that somehow might be relevant to the employee's rehabilitation. *See id.* at § 61.13(a).

It may be true in this case that the most cost-effective decision would be to uphold the Commission's award. Such a determination might stave off the much more expensive possibility of placing Mr. Grantham in an inpatient rehabilitation program. Nevertheless, cost-effectiveness is not the sole goal of our Workers' Compensation Act, and as the Act is presently written, we hold that it is not a reasonable interpretation of the statute to classify the payment of consumer debt as a rehabilitative service. We believe that any other decision undermines the integrity of the Act.

We base our conclusion on an analysis of the structure of the Act, case law that develops the relevant provisions, and also on common sense. We simply fail to see how the term "services," in the context of medical rehabilitative services, can reasonably be read to encompass a monetary payment for basic necessities.

Furthermore, the structure of the Workers' Compensation Act indicates the decision below is incorrect. The Act provides a dual approach to employee compensation. *Derebery v. Pitt County Fire Marshall*, 318 N.C. 192, 205-06, 347 S.E.2d 814, 822 (1986) (Billings, J., dissenting in part). First, disability compensation, which is calculated based upon the individual employee's earning power, is provided as a substitute for the wages lost due to the injury. This compensation is the employer's contribution for items that wages ordinarily purchase—the basic necessities of life such as food, clothing and shelter. *Id.* The Act, however, also requires employers to compensate injured employees for medical costs related to their injuries; specifically, employers must pay a permanently disabled employee such as Mr. Grantham for "necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care or rehabilitative services . . . . " N.C. Gen. Stat. § 97-29. In the case before us, we believe the Commission erroneously attempted to engraft one prong of the Act onto the other. By ordering a payment to cover the injured employee's expenses for basic necessities under the guise of "rehabilitative services," the Commission has turned the statute on its head.

In two limited situations, our Supreme Court has upheld payments under the language of "other treatment or care or rehabilitative services" to claimants for medically related expenses that are not listed in the statute. But neither of these cases attempts to stretch the language of the statute as far as the plaintiff here, and we see no conflict between those holdings and our decision in this case. In all, three North Carolina cases have interpreted the questioned language of N.C. Gen. Stat. § 97-29. In *Godwin v. Swift & Co.*, 270 N.C. 690, 155 S.E.2d 157 (1967), the Supreme Court held that the phrase "other treatment or care" covered compensation to pay in-laws of a claimant who needed around-the-clock attention and care. *Id.*

In *McDonald v. Brunswick Electric Membership Corp.*, 77 N.C. App. 753, 336 S.E.2d 407 (1985) (Wells, J., dissenting), this Court held that the statute could not be interpreted to include compensa-

GRANTHAM v. CHERRY HOSPITAL

[98 N.C. App. 34 (1990)]

tion for a specially equipped van for a wheelchair-bound claimant. The employee in *McDonald* sustained an employment-related injury which resulted in amputation of both of his legs and left arm. Although the employee could drive a specially adapted car that could carry a regular wheelchair, he wanted the van to transport himself and his motorized wheelchair. Claimant's employer agreed to pay for the special adaptive equipment installed in the van, but balked at paying for the van itself. *Id.* at 754, 336 S.E.2d at 408. At the hearing before the deputy commissioner, the employee's rehabilitation nurse testified it was important for the claimant's rehabilitation that he learn to do things independently and therefore the specially equipped van was necessary to fully rehabilitate the employee. His physician also testified that the van was an important and necessary part of his rehabilitation. The deputy commissioner concluded that the specially equipped van was a rehabilitative service within the meaning of N.C. Gen. Stat. § 97-29 and ordered the employer to reimburse the claimant for the cost of the van itself. *Id.* On appeal, the Full Commission affirmed and adopted the Opinion and Award of the deputy commissioner. In reversing the Commission, we stated in *McDonald*:

> [N]either the phrase "other treatment or care" nor the term "rehabilitative services" in G.S. 97-29 can reasonably be interpreted to include a specially-equipped van. This language in the statute plainly refers to services or treatment, rather than tangible, non-medically related items such as van; thus, it would be contrary to the ordinary meaning of the statute to hold that it includes the van purchased by plaintiff.

*McDonald*, at 756-57, 336 S.E.2d at 409. Our decision in *McDonald*, which follows the majority rule in this country, was not appealed.

In *McDonald*, we relied in part on another Court of Appeals decision, the third case in our jurisdiction to interpret this section of N.C. Gen. Stat. § 97-29, *Derebery v. Pitt County Fire Marshall*, 76 N.C. App. 67, 332 S.E.2d 94 (1985). In *Derebery*, this Court held that an employer's statutory duty to provide "other treatment or care" did not extend to furnishing a wheelchair-accessible mobile home for an injured employee. However, with three justices dissenting, the Supreme Court overturned that opinion and ordered the employer to pay for the residence. *Derebery*, 318 N.C. 192, 347 S.E.2d 814; *accord Squeo v. Comfort Control Corp.*, 99 N.J. 588, 494 A.2d 313 (1985). Nevertheless, *Derebery* does not control

on the facts before us, and we believe that the holding of the Industrial Commission in this case strays far beyond the boundaries of the statute as outlined by *Derebery* and *Godwin.*

Whether or not specially adaptive vehicles and wheelchair-accessible housing are compensable under the statute are debatable issues, as the four dissents in *Derebery* and *McDonald* indicate. We can see a strong nexus between the words "other treatment or care or rehabilitative service" and requiring adaptive vehicles and housing for wheelchair-bound persons. The connection between that language and paying compensation for consumer debt, on the other hand, is much more tenuous, and we believe not reasonable.

A survey of holdings from other jurisdictions reinforces our determination here. To our knowledge no other court has come close to holding that "rehabilitative services" could encompass consumer debt. The outer limits of this concept are much narrower than the plaintiff before us argues. The Florida Court of Appeals, which has been one of the most generous courts in interpreting the scope of medical services, ordered an employer to pay the nursery school costs for the child of a woman who had to spend much of the day in traction. *Doctors Hosp. of Lake Worth v. Robinson,* 411 So. 2d 958 (1982). The court cautioned, however, that child care expenses would not be construed as a medical necessity in cases involving "less extreme" circumstances. *Id.* Even Florida, however, refused to provide compensation for paying workplace assistants to perform the part of a job that a claimant was unable to do because of her work-induced disability. *Ulmer v. Jon David Coiffures,* 458 So. 2d 1218 (1984). The court recognized that under certain circumstances medical allowances had been made for vehicles, pools, child care and the like, but that no cases authorized compensation for the cost of aid in performing the job functions of a disabled worker. *Id.*

One purpose of the Workers' Compensation Act is to insure a limited and determinate liability for employers. To this end, courts must not legislate expanded liability under the guise of construing a statute liberally. *McDonald,* 77 N.C. App. at 756, 336 S.E.2d at 409. While the Act should be liberally construed to benefit the employee, the plain and unmistakable language of the statute must be followed. *Hardy v. Small,* 246 N.C. 581, 99 S.E.2d 862 (1957). We do not believe that the General Assembly intended to include compensation for an employee's consumer debt within the meaning

of "rehabilitative services." The Industrial Commission, therefore, was without authority to require the defendant to bear that responsibility. Accordingly, we reverse the opinion and award below.

Reversed.

Judges JOHNSON and ORR concur.