DAVID LEE GRIGGS, Employee, Plaintiff v. EASTERN OMNI CONSTRUCTORS, Employer, and LEGION INSURANCE COMPANY, Carrier, Defendants

No. COA02-1093

(Filed 17 June 2003)

**Workers' Compensation— injury by accident—findings**

A workers' compensation case was remanded to the Industrial Commission for further findings as to whether plaintiff was injured while performing his usual tasks in the usual way under the totality of conditions. Plaintiff was an electrician assigned to pull wire from machinery without damaging it; the work was done while short-handed and under time constraints,

and involved passing the wire through a control panel more than twenty feet above the floor. The Commission found that pulling wire in awkward positions was a normal part of plaintiff's job routine, but this is not dispositive.

Appeal by plaintiff from Opinion and Award of the North Carolina Industrial Commission filed 18 March 2002. Heard in the Court of Appeals 15 May 2003.

*Heidi G. Chapman for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, PLLC, by Alison R. Bost, for defendants-appellees.*

TYSON, Judge.

David Lee Griggs ("plaintiff") appeals from an opinion and award of the North Carolina Industrial Commission ("Commission") which denied workers' compensation benefits. We remand to the Commission for further findings of fact and conclusions of law.

## I. Background

On 6 April 1999, plaintiff, who had been an electrician for twenty-two years, was employed by Omni Constructors ("employer") as an electrician and was working at a job site in Brown Summit. Plaintiff and Richard Lambeth were assigned a "rush job" of pulling old wire leading from heavy machinery without damaging the wire in order that it could be reinstalled.

Plaintiff testified that he asked his supervisor for more help because he did not feel that he and Lambeth would be able to complete the assignment within the time frame required. His supervisor was unable to provide additional assistance because they were "very short on personnel."

In order to remove the wire without damage, plaintiff was required to disconnect the wire, pull it out of one set of conduit, lay it out on the floor to straighten it, and feed the wire through another conduit located above the ceiling which led to a control panel where Lambeth could roll the wires. Each bundle of wires weighed approximately 130 pounds.

Plaintiff was pulling the wire up and feeding it through the control panel, more than twenty feet above the floor. Plaintiff testified "I

was having to stand between the race way in my front, and the conduit running at my back, and I was having to reach across my left side down below my knees and [dead] lift this wire up and hold it over my head to guide it to go down to the conduit, to come out the other end to go back into the control panel to be rolled up." In response to the question "Have you ever done that procedure before?", plaintiff responded "It's an awkward position to pull wire in, and it was very hard, but I can't actually say I've actually been in a situation where I had to pull wire like that before, no."

On cross-examination, plaintiff admitted that pulling wire both in installation and in removal were normal parts of his employment. Plaintiff explained, "We were told that this wire was to be saved, that the company wanted to try to re-install a machine, which is very unusual, and this was the first time I'd ever even done this in 22 years." Pulling wire on removal is different because "where you're doing a demolition, generally the wire is just cut off, and it's cut off in a manner where you can just more or less just reach it with one hand and yank it out of the pipe."

While plaintiff was working in an "awkward position," he felt "something pop really hard in [his right] shoulder." Plaintiff waited a few minutes for the pain to subside and resumed work with his other hand to complete his tasks. Plaintiff informed his employer of the injury at his break.

After examining plaintiff, Dr. James Kendall placed plaintiff's arm in a sling, ordered light work for four to five days and prescribed prescription Ibuprofen. Despite plaintiff's complaint of continued pain, employer returned plaintiff to his previous job. When plaintiff informed employer that he was not able to continue working because of the pain, employer terminated plaintiff.

Plaintiff was examined by an orthopedic surgeon who diagnosed plaintiff with a rotator cuff strain/sprain with tendinitis/bursitis and "DJD AC joint." When conservative treatment failed, plaintiff underwent surgery to rebuild a collapsed rotator cuff, remove a bone chip, and repair damage to the shoulder ligaments.

Employer presented evidence that pulling wire was a part of the daily requirements for electricians working with employer. Fred Redman testified that there was nothing unusual in plaintiff's description of the manner in which he was pulling wire, but that he was not present that day and did not see the conditions under which plaintiff

GRIGGS v. EASTERN OMNI CONSTRUCTORS

[158 N.C. App. 480 (2003)]

worked. Redman further testified that running wires high up off the floor was common.

The Commission found that a normal part of an electrician's job was to "pull wire" through a conduit. Depending on the job, an electrician may be "in an awkward position from time to time." The Commission found:

> 5. The evidence fails to show that plaintiff's right shoulder injury was caused by an accident arising out of and in the course of his employment with defendant-employer. While plaintiff indicated that he was in an awkward position, his testimony is equivocal regarding the unusualness of the incident. The greater weight of the evidence including his testimony demonstrates that there was no interruption of his regular work routine, as pulling wire sometimes in awkward positions was a normal part of plaintiff's job routine. Significantly, plaintiff had been working as an electrician pulling wire for 22 years. Moreover, there was nothing unusual in what plaintiff was required to do in removing the wire on April 6, 1999.

The Commission concluded that plaintiff was not entitled to benefits because the injury did not occur by accident. Commissioner Laura Kranfield Mavretic dissented. Plaintiff appeals.

## II. Issues

Plaintiff contends the Commission erred in (1) concluding plaintiff did not suffer an injury by accident and (2) failing to make sufficient findings of fact.

## III. Standard of Review

In appeals from the Commission, our review is limited to whether there is any competent evidence in the record to support the Commission's findings of fact. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998). Even where there is competent evidence to the contrary, we must defer to the findings of the Commission where supported by any competent evidence. *Larramore v. Richardson Sports Ltd. Partners*, 141 N.C. App. 250, 259, 540 S.E.2d 768, 773 (2000), *aff'd*, 353 N.C. 520, 546 S.E.2d 87 (2001). The Commission's findings of fact may only be set aside when "there is a complete lack of competent evidence to support them." *Click v. Freight Carriers*, 300 N.C. 164, 166, 265 S.E.2d 389, 390 (1980). We review conclusions of law *de novo*.

## IV.  Injury by Accident

Plaintiff contends the Commission erred in concluding plaintiff did not suffer an injury by accident.

A compensable injury is an "injury by accident arising out of and in the course of employment." N.C. Gen. Stat. § 97-2(6). An accident has been defined as "an unlooked for and untoward event which is not expected or designed by the injured employee." *Norris v. Kivettco, Inc.*, 58 N.C. App. 376, 378, 293 S.E.2d 594, 595 (1982). "There must be some unforeseen or unusual event other than the bodily injury itself." *Rhinehart v. Roberts Super Market, Inc.*, 271 N.C. 586, 588, 157 S.E.2d 1, 3 (1967). "If an employee is injured while carrying on his usual tasks in the usual way the injury does not arise by accident." *Lineback v. Wake County Bd. of Comm'rs*, 126 N.C. App. 678, 681, 486 S.E.2d 252, 254-55 (1997). "An accident therefore involves 'the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences." *Calderwood v. Charlotte-Mecklenburg Hosp. Auth.*, 135 N.C. App. 112, 115, 519 S.E.2d 61, 63 (1999), *disc. rev. denied*, 351 N.C. 351, 543 S.E.2d 124 (2000).

In *Calderwood*, the plaintiff was a registered nurse assisting in the delivery room. 135 N.C. App. at 113, 519 S.E.2d at 62. The patient she was assisting was 5'3" tall and weighed 263 pounds. *Id.* The patient received an epidural which resulted in a "complete block" such that she was unable to assist in lifting her own leg. The plaintiff lifted the patient's leg without assistance from the patient and injured her shoulder. *Id.* The plaintiff testified that she was sometimes required to assist in lifting a patient's leg as part of her usual job, however, the size and complete lack of assistance from the patient was unusual. *Id.* The plaintiff's supervisor testified that lifting the leg of a patient during delivery was a "job expectation." *Id.* at 114, 519 S.E.2d at 62. The Commission found that the plaintiff was injured while performing her usual employment duties in the usual way. *Id.* at 114, 519 S.E.2d at 63. This Court reversed holding that there was no competent evidence to support the findings that the injury occurred while performing her usual employment and were not a result of unforeseen or unusual event. *Id.* at 116, 519 S.E.2d at 64. "The fact that her job responsibility did include assisting patients who received epidurals resulting in a total block is not dispositive. The question is whether her regular work routine required lifting the legs of women weighing 263 pounds who had received epidurals resulting in total

blocks, . . . and there is no evidence that it did." *Id.* at 116, 519 S.E.2d at 63-64.

Here, plaintiff testified that he was pulling old wire, under an accelerated time frame, without additional help, twenty-five feet above the ground, and attempting to salvage the wire to reuse. Plaintiff presented evidence to show that he needed and should have been given additional help in completing this job. Defendants did not present any evidence to dispute plaintiff's evidence regarding the usual number of employees required for the specific job, the usual time frame for such a job, or that the actions of plaintiff were usual. None of defendant's witnesses were present at the time of the injury.

The Commission found "pulling wire sometimes in awkward positions was a normal part of plaintiff's job routine." This is not dispositive. The question is whether the totality of the conditions under which plaintiff worked at the time of the injury were "usual tasks in the usual way" expected of an electrician working for the employer. *Lineback*, 126 N.C. App. at 681, 486 S.E.2d at 255.

### V. Conclusion

We remand this case to the Commission for further findings, either with or without the taking of additional evidence, regarding whether, under the totality of the circumstances, plaintiff was performing "usual tasks in the usual way" expected of an electrician working for the employer.

Remanded.

Judges McGEE and CALABRIA concur.