GLENN R. CARROLL, Employee, Plaintiff v. TOWN OF AYDEN, Employer, AND SELF-INSURED (N.C. LEAGUE OF MUNICIPALITIES, Servicing Agent), Defendants

No. COA02-1551

(Filed 21 October 2003)

**1. Workers' Compensation— occupational disease—hepatitis C—increased risk**

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff sewer worker was not exposed to an increased risk of hepatitis C at work, because: (1) a defense expert's testimony that he could not identify plaintiff's job as the source of hepatitis C infection when there was no evidence of direct exposure to infected blood was competent evidence supporting this finding; and (2) the Commission's findings of fact cannot be overruled merely based on plaintiff's presentation of evidence which would support a contrary finding.

**2. Workers' Compensation— occupational disease—hepatitis C—causation—expert testimony**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff sewer worker's hepatitis C infection was not caused by his employment even though plaintiff contends the Commission should have given greater weight to the deposition testimony of plaintiff's expert witness rather than defendant's expert witness based on the fact that plaintiff's expert actually treated plaintiff while defendant's expert merely reviewed material about plaintiff, because: (1) the Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible; and (2) defense expert's testimony is competent record evidence which supports the Commission's findings of fact.

Judge Wynn dissenting.

Appeal by plaintiff from an opinion and award entered 17 July 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 September 2003.

*Stanley Law Firm, by Wade A. Stanley, for plaintiff-appellant.*

*Lewis & Roberts, P.L.L.C., by Jack S. Holmes, for defendants-appellees.*

LEVINSON, Judge.

Plaintiff appeals from an opinion and award of the North Carolina Industrial Commission denying plaintiff's Workers' Compensation claim. We affirm.

Plaintiff was employed by the Town of Ayden, North Carolina, in 1980 in the water and sewer department. His initial job duties included tasks associated with installation, maintenance, and repair of the Town's water and sewer system. In performing his duties, plaintiff was regularly exposed to raw sewage containing materials such as water, urine, feces, grease, feminine hygiene products, prophylactics, small amounts of blood, and other items and substances that people flush down toilets.

The sewage sometimes touched plaintiff's skin or entered his eyes and mouth. When plaintiff had cuts or abrasions, the sewage came into contact with his broken skin. Plaintiff was promoted to foreman in 1984, and later to superintendent; after each promotion, his exposure to raw sewage became less frequent.

In 1992, liver function tests conducted during a physical examination of plaintiff indicated possible liver problems. Testing revealed that plaintiff did not have hepatitis A or B. In 1998, routine blood work for an unrelated problem also yielded abnormal liver function test results. Plaintiff's physician referred him to Dr. Douglas F. Newton, an internist and gastroenterologist, who diagnosed plaintiff with hepatitis C. In Dr. Newton's opinion, plaintiff had been infected for about six years and had acquired the infection due to contact with sewer water.

Plaintiff filed a workers' compensation claim alleging that his hepatitis C was a compensable occupational disease as defined in N.C.G.S. § 97-53(13) (2001). In support of his claim, plaintiff offered Dr. Newton's deposition testimony, in which the doctor offered an opinion that, to a reasonable degree of medical certainty, plaintiff was

likely infected with hepatitis C through work-related contact with sewage. Plaintiff also presented evidence that his wife of twenty-seven years had tested negative for hepatitis C, and testified that he had no history of blood transfusions, tattoos or intravenous drug use, and had not had extramarital sexual contact.

Defendant offered the deposition testimony of Dr. John F. Campbell, an expert in infectious diseases. Dr. Campbell never treated plaintiff; his testimony was based upon plaintiff's job description and personnel file, interrogatories, and plaintiff's medical file. Dr. Campbell testified that he was unaware of any studies linking plaintiff's occupation with a greater-than-average risk of hepatitis C infection. Moreover, Dr. Campbell indicated that, while he could not determine the cause of plaintiff's hepatitis C, he saw no evidence of plaintiff contracting hepatitis C at work.

The Commission found, in pertinent part:

10. Because Dr. Newton attributed plaintiff's hepatitis to his exposure to sewage at work, plaintiff filed this workers' compensation claim. Defendant then presented the issue to Dr. Campbell, an internist and infectious disease specialist who had worked for the Center for Disease Control for two years during his career. Dr. Campbell searched the medical literature and found no studies which showed Hepatitis C to be present in sewage or that sewage could transfer the virus. There was no scientific evidence to support the theory that sewer workers were at an increased risk of acquiring the infection and, in view of the large number of sewage systems and sewer workers, the doctor was of the opinion that the risk would have been noticed if it existed. Despite the large number of patients he had treated for Hepatitis C, Dr. Campbell had never had a patient claim to have contracted the disease from exposure to sewage.

11. Dr. Campbell explained that Hepatitis C is a virus which is transmitted through a blood borne route. . . . Hepatitis C is usually transmitted by shared intravenous needles, but there have been less frequent reports of sexual transmission and rare cases of cuts or punctures allowing the virus to enter the blood stream when exposed to infected blood. . . . In addition, the Hepatitis C virus has a very short life span outside of the host, which has hampered research since it cannot be cultured. The fact that the Hepatitis C virus does not survive long outside the host renders transmission through sewer waste unlikely. There has been con-

siderable effort in medicine to identify the routes of transmission for Hepatitis C. Contact with sewer waste has not been identified as a potential cause for Hepatitis C.

12. Dr. Newton was too quick to attribute plaintiff's condition to his exposure to sewage. Not only did Dr. Newton not have scientific authority to support his opinion, he could not base his opinion on his own experience in medical practice since he had not treated another sewer worker for Hepatitis C. In addition, as noted by Dr. Campbell, there are disincentives for patients to disclose the types of activities which could lead to infection.

13. Although plaintiff was exposed to untreated sewer water which would have contained some blood and although he worked at times with cuts or abrasions on his skin, he has not proven by the greater weight of the evidence to have been placed at an increased risk of developing Hepatitis C by reason of his exposure to untreated sewage in his employment with defendant. Nor was his exposure to untreated sewage proven to have been a significant contributing factor in his contraction of the disease.

14. Plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant employer and which excluded all ordinary diseases of life to which the general public was equally exposed.

The Commission made the following relevant conclusion of law:

1. Plaintiff's Hepatitis C was not an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer and which excluded all ordinary diseases of life to which the general public was equally exposed. Dr. Newton's bald opinion is not accepted as credible evidence of causation because his opinion is not based on accepted medical principles of differential diagnosis and is not supported by the accepted medical literature.

(citations omitted).

The Full Commission, with one Commissioner dissenting, denied compensation. Plaintiff now appeals the Commission's opinion and award, contending (1) the Commission erred in finding that plaintiff was not exposed to hepatitis C at work, and (2) the Commission erred

in concluding that plaintiff's hepatitis C infection was not caused by his employment.

Our review of the Commission's opinion and award "is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 132-33, 535 S.E.2d 602, 604 (2000). "The facts found by the Commission are conclusive upon appeal to this Court when they are supported by competent evidence, even when there is evidence to support contrary findings." *Pittman v. Int'l Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 709, *disc. review denied*, 350 N.C. 310, 534 S.E.2d 596, *aff'd per curiam*, 351 N.C. 42, 519 S.E.2d 524 (1999). "[T]his Court is 'not at liberty to reweigh the evidence and to set aside the findings . . . simply because other . . . conclusions might have been reached.'" *Baker v. Sanford*, 120 N.C. App. 783, 787, 463 S.E.2d 559, 562 (1995) (quoting *Rewis v. Ins. Co.*, 226 N.C. 325, 330, 38 S.E.2d 97, 100 (1946)), *disc. review denied*, 342 N.C. 651, 467 S.E.2d 703 (1996). "[T]he full Commission is the sole judge of the weight and credibility of the evidence. . . ." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) (citing *Adams v. AVX Corp.*, 349 N.C. 676, 680-81, 509 S.E.2d 411, 413-14 (1998)). "[T]he Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible." *Id.* This Court reviews the Commission's conclusions of law *de novo*. *Griggs v. E. Omni Constructors*, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003).

Under the Workers' Compensation Act, a compensable occupational disease includes "[a]ny disease . . . proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C.G.S. § 97-53(13) (2001).

> For a disease to be occupational under G.S. 97-53(13) it must be (1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged; (2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and (3) there must be "a causal connection between the disease and the [claimant's] employment."

*Rutledge v. Tultex Corp.*, 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983) (quoting *Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 105-06 (1981)). "[T]he first two elements are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally." *Id.* at 93-94, 301 S.E.2d at 365. Proof of the third element, causal connection between the disease and the employee's occupation, often will be based on circumstantial evidence. *Booker v. Duke Med. Ctr.*, 297 N.C. 458, 476, 256 S.E.2d 189, 200 (1979). "Among the circumstances which may be considered are the following: (1) the extent of exposure to the disease or disease-causing agents during employment, (2) the extent of exposure outside employment, and (3) absence of the disease prior to the work-related exposure as shown by the employee's medical history." *Id.*

[1] Plaintiff first contends that the competent record evidence compelled a finding that his employment placed him at an increased risk of contracting hepatitis C. This is so, plaintiff argues, because (1) raw sewage came into contact with plaintiff's cuts and abrasions, (2) plaintiff testified that he has not engaged in other risk-enhancing behavior, and (3) plaintiff's treating physician, Dr. Newton, offered an expert opinion that plaintiff's employment resulted in his illness.

The Commission found that plaintiff's employment did not place him at an increased risk of contracting hepatitis based in large part on the deposition testimony of defendant's expert witness, Dr. Campbell. Dr. Campbell testified that exposure to sewer water has not been linked to the transmission of hepatitis C. Dr. Campbell also testified that hepatitis C does not survive outside of a host body for any significant amount of time, that transmission usually requires exposure of the skin to fairly large volumes of infected blood, and that no evidence exists that exposure to diluted amounts of infected blood can transmit hepatitis C. Dr. Campbell concluded that he could not identify plaintiff's job as the source of hepatitis C infection because he had seen no evidence of direct exposure to infected blood.

Dr. Campbell's testimony is competent evidence which supports the Commission's finding that plaintiff was not at an increased risk of contracting hepatitis C as a result of his employment-related contact with raw sewage. We cannot overrule the Commission's findings of fact merely because plaintiff presented evidence which would support a contrary finding. *See Pittman*, 132 N.C. App. at 156, 510 S.E.2d at 709.

**[2]** Plaintiff next contends that the Commission erred in concluding that his hepatitis C infection was not caused by his employment. The gravamen of this contention is that the Commission should have given greater weight to the deposition testimony of plaintiff's expert witness, Dr. Newton, than to defendant's expert witness, Dr. Campbell. This is so, plaintiff argues, because Dr. Newton actually treated plaintiff while Dr. Campbell reviewed material about plaintiff submitted to him by defense counsel.

"[T]he Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible." *Deese*, 352 N.C. at 116, 530 S.E.2d at 553. In the present case, however, the Commission did explain its assessment of the credibility of the witnesses; the findings of fact indicate that the Commission found Dr. Campbell's testimony more persuasive than Dr. Newton's tetimony. As already indicated, Dr. Campbell's testimony is competent record evidence which supports the Commission's findings of fact. These findings of fact support the Commission's conclusion that compensation is unwarranted.

The assignments of error are overruled. The Industrial Commission's opinion and award is

Affirmed.

Judge WYNN dissents.

Judge TYSON concurs.

WYNN, Judge dissenting.

"It is the duty of the Commission to consider *all* of the competent evidence, make *definitive* findings, draw its conclusions of law from these findings, and enter the appropriate award. In making its findings, the Commission's function is to *weigh and evaluate* the *entire* evidence and determine as best it can where the truth lies." *Harrell v. J.P. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835 (1980). Moreover, in workers' compensation cases, it is a "general principle that the provisions of the Workers' Compensation Act should be construed liberally so that benefits are not denied to an employee based on a narrow or strict interpretation of the statute's provisions." *Grantham v. Cherry Hosp.*, 98 N.C. App. 34, 37, 389 S.E.2d 822, 823 (1990). In this case, because I believe the Commission did not consider all of the competent evidence and did not base its decision

upon a fair and liberal construction of N.C. Gen. Stat. § 97-53(13), I respectfully dissent.

The record indicates the Commission was presented with evidence of blood-borne pathogen regulations implemented by OSHA, with which the Town of Ayden had to comply.[1] Under OSHA standard 1910.1030, after reviewing all of the evidence in the rulemaking record, OSHA "determined that employees face a significant health risk as the result of occupational exposure to blood and other potentially infectious materials (OPIM) because they may contain blood-borne pathogens. These pathogens include but are not limited to HBV, which causes hepatitis B; HIV, . . ., hepatitis C virus . . . ." Included in the employees at risk were "employees handling regulated waste, custodial workers required to clean up contaminated sharps or spills of blood or OPIM, . . . maintenance workers, such as plumbers." Therefore, OSHA required certain standards to be implemented to minimize the risk of infection. Therefore, even though both experts testified they were not aware of any literature indicating sewer maintenance workers were at a greater risk of contracting Hepatitis C than the general public, there was competent evidence in the record indicating sewer maintenance workers were indeed at a greater risk than the general public. Accordingly, finding of fact 10, which states in part: "there was no scientific evidence to support the theory that sewer workers were at an increased risk of acquiring the infection" is not supported by the record.

Moreover, the Commission based its decision upon an improper inference from the evidence presented. In Findings of Fact 11-12, the Commission described the testimony of Dr. John Campbell and Dr. Douglas F. Newton. Dr. Newton, a licensed physician for 26 years and a board-certified expert specialist in gastroenterology and internal medicine, treated plaintiff, analyzed plaintiff's medical records and questioned plaintiff about his medical history, any possible history of risky behaviors, and his employment. In contrast, Dr. Campbell had been licensed in North Carolina for 13 years and had never treated plaintiff. Although Dr. Campbell had worked for two years with the Center for Disease Control, he did not conduct any research in Hepatitis C and has never published on the subject. Rather, Dr. Campbell's worked in epidemic intelligence at the CDC. In order to render an opinion, Dr. Campbell researched medical literature and reviewed plaintiff's medical and employment records.

---

1. Violation of the standard could result in civil or criminal penalties. *See* N.C. Gen. Stat. §§ 95-131, 95-138 and 95-139.

In rendering its finding on Dr. Newton's testimony, the Commission stated: "Dr. Newton was too quick to attribute plaintiff's condition to his exposure to sewage. Not only did Dr. Newton not have scientific authority to support his opinion, he could not base his opinion on his own experience in medical practice since he had not treated another sewer worker for Hepatitis C."

A close analysis of the depositions indicate the doctors provided essentially the same testimony regarding Hepatitis C. Both doctors testified that Hepatitis C is a blood-borne pathogen that infects the liver and can possibly lead to death. They both testified that most people get it through direct exposure through cuts or injections and that IV drug use was the most common method. They also testified that people could get it through blood transfusions but that it was rare to get it through sexual conduct. Finally, they both testified that they were unaware of any medical literature linking Hepatitis C to sewer maintenance workers or indicating Hepatitis C could be transmitted through sewer water and neither doctor had treated another sewer worker for Hepatitis C.

Based upon a complete history of plaintiff's behaviors, employment and medical care, Dr. Newton attributed plaintiff's Hepatitis C infection to workplace exposure. However, without the benefit of plaintiff's complete history and based upon his assessment of the medical literature, Dr. Campbell testified that plaintiff did not contract it from workplace exposure and could not state a cause of his Hepatitis C.

Disregarding the OSHA standard and the similarities in the testimony, the Commission based Findings of Fact 11 and 12 solely upon the doctors' testimony that they were unaware of any medical literature indicating Hepatitis C could be transmitted through sewer water or that sewer workers were at a greater risk of contracting the disease. Notably, neither doctor testified that there was no scientific evidence of such a connection.

Finally, the Commission, disregarding plaintiff's work environment and behavioral history, neglected its duty to apply a fair and liberal construction to the statute. As plaintiff explained to his doctor and the Commission, he began working for the Town of Ayden as a water and sewer maintenance and lift station technician in 1980. From 1980 until 1986, he worked on a daily basis for an average of 4-5 hours in untreated, raw sewage that contained needles, syringes,

CARROLL v. AYDEN

[160 N.C. App. 637 (2003)]

blood, urine, feces, feminine hygiene products, prophylactics and any other thing people flushed down a toilet. Because he was working with metal and rough surfaces, he would frequently get cuts and abrasions which he treated with antiseptic and covered with a band-aid. Plaintiff also had a condition where his nose would bleed easily and it was not unusual for plaintiff to come out of the sewer with a nosebleed. While unclogging sewer mains and pipes, it was not unusual for plaintiff to be showered with raw, untreated sewage and it was not uncommon for sewage to enter his eyes and mouth. His rain suit and clothes would become saturated with sewage and would come into contact with his skin. His gloves would puncture and tear and raw sewage would seep into his gloves and rubber boots. Dr. Newton testified that given this exposure to blood and raw sewage and after eliminating all other possible causes of infection, he opined that plaintiff contracted Hepatitis C at work because there was no other source of exposure.

Ignoring plaintiffs workplace exposure to blood, plaintiff's testimony indicating he had not participated in any behaviors that could have been another potential source of Hepatitis C infection, Dr. Newton's expert opinion, and OSHA regulations indicating sewer maintenance workers were at an increased risk of contracting Hepatitis C, the Commission chose to rely upon the doctors' lack of knowledge regarding medical literature on the subject. In my opinion, the Commission failed to consider all of the competent evidence, did not fulfill its duty to apply a liberal construction to N.C. Gen. Stat. § 97-53(13), and did not try to determine as best it could where the truth lay. *See Harrell v. J.P. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835 (1980). As the determination of whether an occupational disease exists is a mixed question of law and fact, I would conclude plaintiff established by a preponderance of the evidence that he did suffer from an occupational disease. *See Hobbs v. Clean Control Corp.*, 154 N.C. App. 433, 436, 571 S.E.2d 860, 862 (2002) (stating "Plaintiff has the burden of proving [an occupational disease] by a preponderance of the evidence").