ROBBIE C. SCARBORO, EMPLOYEE, PLAINTIFF v. EMERY WORLDWIDE FREIGHT CORP., EMPLOYER, CONSTITUTION STATE SERVICE COMPANY, CARRIER, DEFENDANTS

No. COA07-1437

(Filed 2 September 2008)

**1. Workers' Compensation— lawn care services—not a reasonable medical expense**

The Industrial Commission did not err in a workers' compensation case by denying lawn care services to plaintiff despite the inclusion of such services in a life care plan as a reasonable medical expense. The conclusion that the lawn care services were an ordinary expense of life not included in medical compensation was supported by the findings, and defendants are not necessarily required to pay for each item mentioned in the life care plan.

**2. Workers' Compensation— life care plan—reasonable rehabilitative service**

The Industrial Commission's decision in a workers' compensation case that a life care plan was a reasonable rehabilitative

service was supported by a physician's opinion that the plan was medically necessary for plaintiff.

Appeal by plaintiff and defendants from opinion and award entered 7 August 2007 by the Full Commission. Heard in the Court of Appeals 30 April 2008.

*Sellers, Hinshaw, Ayers, Dortch and Lyons, P.A. by John F. Ayers, III, for plaintiff.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by M. Duane Jones, for defendants.*

ELMORE, Judge.

Both parties in this case appeal from an Opinion and Award issued by the Full Commission on 7 August 2007. For the reasons stated below, we affirm the Full Commission's Opinion and Award.

Robbie Scarboro (plaintiff) was employed as a utility driver for Emery Worldwide Freight Corporation (defendant). On 4 November 1998, plaintiff injured his upper back and left shoulder while he was unloading freight off of a truck. Defendants filed a Form 60 admitting compensability of plaintiff's injuries. On 14 March 2001, Deputy Commissioner (now Commissioner) Pamela T. Young filed an Opinion and Award which found plaintiff's injury to be causally related to his 4 November 1998 accident.

Since plaintiff's injury, he has been treated by numerous physicians. On 5 January 2001, neurologist Dr. Erik Borresen began treating plaintiff and has remained his primary treating physician. Dr. Borresen diagnosed plaintiff as having "left low thoracic neuropathy, left pectoralis transposition, chronic myofascial neck and shoulder pain, chest pain, lumbar disc disease, right knee meniscal tear, depression, and muscle contraction headaches." Plaintiff has a fifty percent permanent partial impairment as a result of his chronic pain disorder and a forty percent permanent functional impairment to his left shoulder. Dr. Borresen said that it was highly unlikely that plaintiff would return to gainful employment. On 2 February 2002, a life care plan was prepared for plaintiff by Ms. Laura Weiss, a registered nurse, certified life care planner, certified case manager, and certified disability management specialist. The life care plan included recommendations that plaintiff be provided lawn care services and that grab rails and handrails be installed in his home. Dr. Borresen

reviewed the life care plan and agreed that the recommendations were reasonable and medically necessary.

Deputy Commissioner Bradley W. Houser heard this case on 23 July 2003. Deputy Commissioner Houser issued an Opinion and Award on 12 November 2003. Plaintiff appealed the 12 November 2003 Opinion and Award to the Full Commission. On 26 October 2004, the Full Commission entered an Opinion and Award that ordered defendants to provide the Botox injections ordered by Dr. Borresen and the recommended home guard rails. It also concluded that there was insufficient evidence on the issue of lawn care services, but did not make a final decision as to whether medical evidence could sufficiently support lawn care services for plaintiff.

On 26 May 2005, plaintiff requested that defendants reimburse him for $4,700.58, the cost of the life care plan, but defendants refused. On 1 July 2005, plaintiff filed a Motion for Approval of Specific Medical Treatment/Life Care Plan, which Special Deputy Commissioner Meredith Henderson denied on 22 July 2005. Plaintiff subsequently filed a Form 33 appealing the 22 July 2005 order and requesting further decision on the medical necessity for lawn care services.

On 16 November 2005, the appeal was heard before Deputy Commissioner Ronnie E. Rowell. Deputy Commissioner Rowell filed an Opinion and Award on 10 October 2006 that required defendants to pay for the preparation of plaintiff's life care plan and to provide plaintiff compensation for lawn care services.

Defendants appealed the 10 October 2006 Opinion and Award and the matter was heard before the Full Commission on 24 May 2007. On 7 August 2007, the Full Commission entered an Opinion and Award that denied plaintiff compensation for lawn care services and ordered defendants to reimburse plaintiff for the costs associated with preparing his life care plan. Plaintiff appeals the Full Commission's denial of lawn care services and defendants appeal the order requiring them to pay for the preparation of plaintiff's life care plan.

I. STANDARD OF REVIEW

Our review of an appeal from a decision of the North Carolina Industrial Commission is limited to the following: (1) "whether there was any competent evidence to support the Full Commission's findings of fact" and (2) "whether these findings of fact support the conclusions of law." *Ard v. Owens-Illinois*, 182 N.C. App. 493, 496, 642

S.E.2d 257, 259 (2007) (quotations and emphasis omitted). A finding of fact is "conclusive on appeal if supported by any competent evidence[,]" even where there is evidence to contradict the finding. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quotations removed). We review the Full Commission's conclusions of law *de novo. Oxendine v. TWL, Inc.*, 184 N.C. App. 162, 164, 645 S.E.2d 864, 865 (2007).

## II. PLAINTIFF'S APPEAL

[1] Plaintiff appeals the Full Commission's denial of the lawn care services and assigns error to conclusion of law 4, which states the following:

> An ordinary necessity of life is to be paid from the statutory wages provided by the Workers' Compensation Act. Extraordinary and unusual expenses are embraced in the "other treatment" language of N.C. Gen. Stat. § 97-25. . . . In the present case, the lawn care services recommended by the life care plan are ordinary expenses of life for plaintiff and are not extraordinary and unusual expenses that plaintiff has incurred as a result of his work-related injury. Accordingly, these expenses are not payable by defendants. N.C. Gen. Stat. §§ 97-25; -2(19); -29.

Plaintiff has not assigned error to any findings of fact; therefore all factual findings are "presumed to be supported by the evidence and are binding on appeal." *Watson v. Employment Security Comm.*, 111 N.C. App. 410, 412, 432 S.E.2d 399, 400 (1993) (citing *Beaver v. Paint Co.*, 240 N.C. 328, 330, 82 S.E.2d 113, 114 (1954)). Our review of plaintiff's appeal is limited to whether conclusion of law 4 is supported by the factual findings.

The North Carolina Workers' Compensation Act requires employers to provide medical compensation to workers "who suffer disability by accident arising out of and in the course of their employment." *Henry v. Leather Co.*, 234 N.C. 126, 127, 66 S.E.2d 693, 694 (1951). N.C. Gen. Stat. § 97-25 states that "[m]edical compensation shall be provided by the employer." N.C. Gen. Stat. § 97-25 (2007).[1] Medical compensation is:

> medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel, and *other treatment*, including med-

---

1. All relevant provisions in N.C. Gen. Stat. § 97-25 and N.C. Gen. Stat. § 97-2(19) contained the same language when plaintiff filed his claim. *See* N.C. Gen. Stat. § 97-2(19) (2003); N.C. Gen. Stat. § 97-25 (2003).

ical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability[.]

N.C. Gen. Stat. § 97-2(19) (2007) (emphasis added). Plaintiff argues that the lawn care services, recommended by the life care plan, are reasonably medically necessary because of his chronic pain condition. Plaintiff asserts that the lawn care services are not an ordinary expense, but instead are an extraordinary and unusual expense included in the "other treatment" language of N.C. Gen. Stat. § 97-25. N.C. Gen. Stat. § 97-25 (2007).

"One purpose of the Workers' Compensation Act is to [e]nsure a limited and determinate liability for employers." *Grantham v. Cherry Hosp.*, 98 N.C. App. 34, 40, 389 S.E.2d 822, 826 (1990). "While the Act should be liberally construed to benefit the employee, the plain and unmistakable language of the statute must be followed." *Id.* To this end, "courts must not legislate expanded liability under the guise of construing a statute liberally." *McDonald v. Brunswick Elec. Membership Corp.*, 77 N.C. App. 753, 756, 336 S.E.2d 407, 409 (1985).

North Carolina courts have previously interpreted the term "other treatment" in relation to N.C. Gen. Stat. § 97-29.[2] N.C. Gen. Stat. § 97-29 (Supp. 1989); *see McDonald,* 77 N.C. App. at 755-57, 336 S.E.2d at 409 (holding that neither "other treatment or care" nor "rehabilitative services" can be interpreted to include providing the wheelchair-using plaintiff with compensation for his specially equipped van); *Godwin v. Swift & Co.*, 270 N.C. 690, 694-95, 155 S.E.2d 157, 160-61 (1967) (determining that providing compensation to the relatives of a claimant who needed constant care was included in "other treatment").

In *Grantham v. Cherry Hospital*, this Court held that the Full Commission improperly ordered the defendant to pay the plaintiff's consumer debts under the "other treatment . . . or rehabilitative services" provision of N.C. Gen. Stat. § 97-29. 98 N.C. App. at 40, 389 S.E.2d at 825; N.C. Gen. Stat. § 97-29 (Supp. 1989). In *Grantham,* the

---

2. N.C. Gen. Stat. § 97-29 previously stated that "compensation, including reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and *other treatment of* [sic] care or rehabilitative services shall be paid by the employer [.]" N.C. Gen. Stat. § 97-29 (Supp. 1989) (emphasis added). Similar language is now codified in N.C. Gen. Stat. § 97-2(19), which is used to define for "medical compensation" in N.C. Gen. Stat. § 97-25. N.C. Gen. Stat. § 97-2(19) (2007); N.C. Gen. Stat. § 97-25 (2007); N.C. Gen. Stat. § 97-29 (Supp. 1989).

plaintiff had accumulated nearly $28,000.00 in debt because his income had substantially decreased after he became disabled. *Id.* at 35, 389 S.E.2d at 822. The plaintiff's physician testified that as a result of the plaintiff's indebtedness, the plaintiff had developed depression, which was interfering with his rehabilitation. *Id.* The defendant was ordered to pay the plaintiff's debts in order to improve his rehabilitation. *Id.* at 36, 389 S.E.2d at 823. We reversed this order and held that the Industrial Commission had misinterpreted the statute by ordering expenses for basic necessities under the guise of rehabilitative services. *Id.* at 40-41, 389 S.E.2d at 826. Applying the above principles to the facts of this case, we do not find that the lawn care services for plaintiff fall into the category of "other treatment" pursuant to N.C. Gen. Stat. § 97-25.

The determination of "what treatment is appropriate for a particular employee is a matter within the exclusive jurisdiction of the [Full] Commission." *N.C. Chiropractic Assoc. v. Aetna Casualty & Surety Co.*, 89 N.C. App. 1, 5, 365 S.E.2d 312, 314 (1988). The Full Commission "is not required to make 'exhaustive findings as to each statement made by any given witness or make findings rejecting specific evidence[.]' " *Smith v. Beasley Enters., Inc.*, 148 N.C. App. 559, 562, 577 S.E.2d 902, 904 (2002) (quoting *Bryant v. Weyerhaeuser Co.*, 130 N.C. App. 135, 139, 502 S.E.2d 58, 62 (1998)). The factual findings are sufficient so long as this Court can "reasonably infer that [the Full Commission] gave proper consideration to all relevant testimony." *Id.* Here, the findings of fact contain information about plaintiff's injury and medical treatments, plaintiff's testimony about his lawn care services, and a few physicians' recommendations on the matter. These factual findings provided the Full Commission with all of the relevant information it needed to decide whether the lawn care services for plaintiff were medically necessary.

The recommendations in plaintiff's life care plan as well as his physicians' testimony supported his argument that the lawn care services were medically necessary. However, defendants also provided evidence supporting their contention that the lawn care services for plaintiff were an ordinary expense, not included in his medical compensation from defendants. This Court may not weigh the evidence or evaluate the credibility of witnesses, as " '[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams*, 349 N.C. at 680, 509 S.E.2d at 413 (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)).

We find that the Full Commission's factual findings support its conclusion of law that the lawn care services for plaintiff are not extraordinary or unusual expenses included in the "other treatment" language of N.C. Gen. Stat. § 97-25. N.C. Gen. Stat. § 97-25 (2007). Findings of fact 8 and 9 recount Dr. Dickerson's opinions that "with [plaintiff's] orthopedic problems, specifically [his] back problems . . . yard work is contraindicated in [his] case" and "it would be hard for [plaintiff] to do his yard work without having a lot of pain, so I don't have an objection to [lawn care services] in this particular case." In finding of fact 10, Dr. Chewning, an orthopedic surgeon, testified that "due to [plaintiff's] back and his shoulder problems, plaintiff should stay away from lawn mowing activities[.]" Furthermore, factual finding 11 stated that plaintiff had previously cut his own grass and has since hired a lawn care service because "he feared penalties would be levied against him by his homeowners' association for violating his restrictive covenants by failing to keep his lawn presentable."

Plaintiff contends that the Full Commission's factual findings could only support a conclusion that the lawn care services are medically necessary for plaintiff. We disagree. The factual findings establish that because of plaintiff's medical condition, he should refrain from mowing his lawn. We understand and appreciate plaintiff's efforts to keep his yard in compliance with the rules of his homeowners' association. However, providing plaintiff with the resources to comply with this restrictive covenant does not rise to the level of "other treatment[.]" These factual findings support the conclusion that the lawn care services are an ordinary expense of life, which is not included in medical compensation, pursuant to N.C. Gen. Stat. § 97-2(19) and N.C. Gen. Stat.§ 97-25.

We also agree with defendants' argument that just because the life care plan was determined to be a reasonable medical expense, defendants are not necessarily required to pay for each item mentioned in the plan. See Timmons v. N.C. Dept. of Transportation, 130 N.C. App. 745, 750, 504 S.E.2d 567, 570 (1998) (Timmons II) (finding that an order requiring the defendant to pay for preparation of the plaintiff's life care plan does not require that the defendant must pay for each item recommended in the plan), rev'd on other grounds, 351 N.C. 177, 522 S.E.2d 62 (1999) (Timmons IV). Due to the aforementioned factors, we do not find error in the Full Commission's denial of lawn care services for plaintiff.

## II. DEFENDANTS' APPEAL

**[2]** Defendants appeal the Full Commission's order requiring them to pay the costs of preparing a life care plan for plaintiff. Defendants assign error to conclusion of law 2 which states the following:

> The greater weight of the evidence shows that the life care plan has been pertinent to plaintiff's case and was reasonably necessary for plaintiff to function optimally, avoid potential complications related to his injuries, and live a productive life. As such, the life care plan was a "reasonable rehabilitative service." N.C. Gen. Stat. §§ 97-2(19);-25; *Timmons v. N.C. Dept. of Transportation*, 351 N.C. 177, 522 S.E.2d 62 (1999).

The Full Commission's conclusion that plaintiff's life care plan was a "reasonable rehabilitative service[,]" pursuant to N.C. Gen. Stat. § 97-2(19) and N.C. Gen. Stat. § 97-25, is supported by its factual findings. We affirm the Full Commission's order taxing the costs of preparing plaintiff's life plan to defendants.

In workers' compensation cases, the employer is required to provide the injured employee with medical compensation, which includes "medical, surgical, hospital, nursing, and *rehabilitative services* . . . as may reasonably be required to effect a cure or give relief[.]" N.C. Gen. Stat. § 97-2(19) (2007) (emphasis supplied); N.C. Gen. Stat. § 97-25 (2007). The Full Commission "has discretion in determining whether a rehabilitative service will effect a cure, give relief, or will lessen a claimant's period of disability." *Foster v. U.S. Airways, Inc.*, 149 N.C. App. 913, 923, 563 S.E.2d 235, 242 (2002). Defendants contend that the order was improper because plaintiff's life care plan was never recommended by an authorized treating physician. Defendants also question Ms. Weiss's qualifications to prepare the life care plan and argue that they have never used the life care plan in their medical treatment decisions for plaintiff. The arguments have no merit and are irrelevant to our review of the Full Commission's Opinion and Award.

As previously discussed, we can only review a decision of the North Carolina Industrial Commission to determine if the factual findings are supported by competent evidence and if the conclusions of law are supported by the factual findings. *Ard*, 182 N.C. App. at 496, 642 S.E.2d at 259. We find that conclusion of law 2 is sufficiently supported by the factual findings.

Our Supreme Court has previously decided that pursuant to N.C. Gen. Stat. § 97-2(19) and N.C. Gen. Stat. § 97-25, preparation of a life care plan can constitute a rehabilitative service. *See Timmons IV*, 351 N.C. at 182, 522 S.E.2d at 65. In *Timmons IV*, a rehabilitation expert recommended developing a life care plan to evaluate the plaintiff's medical needs. *Id.* at 182, 522 S.E.2d at 64-65. Our Supreme Court held that the rehabilitation expert's recommendation provided competent evidence to support the finding that the plaintiff's life care plan was a rehabilitative service, pursuant to N.C. Gen. Stat. § 97-25. *Id.*

We do not need to discuss each of the Full Commission's factual findings that support conclusion of law 2. Conclusion of law 2 can be sufficiently supported by finding of fact 6, which states the following:

On February 6, 2002, a life care plan was prepared by Laura Weiss, a registered nurse, certified life care planner, certified case manager, and certified disability management specialist. The life care plan included recommendations that plaintiff be provided lawn care services and that grab rails be installed in plaintiff's home. Dr. Borresen subsequently reviewed the life care plan and agreed that such accommodations were reasonable and medically necessary. Defendants provided handrails and grab rails for Plaintiff, but denied lawn care services.

Defendants have not assigned error to this factual finding; therefore the finding is "presumed to be supported by the evidence and [is] binding on appeal." *Watson*, 111 N.C. App. at 412, 432 S.E.2d at 400. Dr. Borresen's opinion, that the life care plan was medically necessary for plaintiff, supports the Full Commission's conclusion that the life care plan was a "reasonable rehabilitative service" for plaintiff. For these reasons, we affirm the Full Commission's order to tax the cost of preparing plaintiff's life plan to defendants.

III. CONCLUSION

Having conducted a thorough review of the record and briefs, we discern no error in the Full Commission's Opinion and Award. Accordingly, we must affirm.

Affirmed.

Judges McGEE and JACKSON concur.