JOHN C. YARBOROUGH, Employee, Plaintiff-Appellee,
v.
PIERCE TRAILER SERVICE, Employer, and
ZENITH INSURANCE COMPANY, Carrier, Defendants-Appellants,
No. COA09-4
Court of Appeals of North Carolina
Filed September 15, 2009
This case not for publication
Brumbaugh, Mu & King, P.A., by Nicole D. Wray, for plaintiff-appellant.
Brooks, Stevens & Pope, P.A., by Joy H. Brewer and Ginny P. Lanier, for defendants-appellees.
JACKSON, Judge.
John C. Yarborough ("plaintiff") appeals from an opinion and award of the Full Commission of the North Carolina Industrial Commission ("Full Commission") denying plaintiff's claim for ongoing total disability benefits and awarding plaintiff disability benefits for a fifteen percent permanent partial impairment rating to his back subject to credits to be paid to Pierce Trailer Service ("defendant-employer") and Zenith Insurance Company ("defendant-carrier") (collectively, "defendants"). For the following reasons, we affirm.
On 20 July 2004, plaintiff experienced pain in his shoulder while moving a "come-along" at work. At that time, plaintiff was forty-two years old, had completed the tenth grade, and had worked only in the construction industry as a painter and a welder.
On 21 July 2004, plaintiff presented to Halifax Regional Medical Center ("HRMC") complaining of pain in his right shoulder that had been present for the preceding three to four months, but which had worsened upon moving the come-along. Plaintiff also complained of numbness in his right hand. HRMC records note that plaintiff's shoulder was tender with limited range of motion and that he had no cervical spine tenderness. Plaintiff was diagnosed with a right shoulder strain; he received Darvocet and a splint, and he was referred to a shoulder specialist. On 24 July 2004, plaintiff was released to return to work without restrictions.
On 26 July 2004, plaintiff returned to HRMC and underwent an x-ray of his right shoulder, which revealed minor degenerative changes. At that time, plaintiff also experienced tenderness in his neck. He was diagnosed with right upper extremity pain, and he received a sling and a prescription for Percocet. He was restricted to one-armed work.
On 23 August 2004, plaintiff presented to Dr. Greig McAvoy ("Dr. McAvoy") at Rocky Mount Orthopedics. Dr. McAvoy noted that plaintiff was experiencing radiating discomfort in his right arm with both flexion and extension of his neck. Dr. McAvoy reported plaintiff as having a strength rating of five out of five in all tested groups, and plaintiff had no pain with overhead activities, with resisted shoulder abduction, or with forward elevation. Dr. McAvoy observed that plaintiff had symmetric reflexes in his biceps and triceps, and plaintiff's sensation to light touch was intact. Dr. McAvoy diagnosed plaintiff with cervical spondylosis and mild right cervical radiculopathy. He released plaintiff to return to work with instructions and suggested plaintiff should return to see him as needed.
On 7 September 2004, plaintiff returned to Dr. McAvoy. Dr. McAvoy noted plaintiff's continued symptoms, but he did not observe any muscle weakness or atrophy in plaintiff's right upper extremity. Dr. McAvoy released plaintiff to return to work and recommended Tylenol for pain.
On 19 October 2004, plaintiff returned to Dr. McAvoy and complained of worsened pain in his neck and radiating symptoms. Dr. McAvoy recommended an MRI for plaintiff's cervical spine. Dr. McAvoy gave plaintiff restrictions for modified work that he was not to lift more than twenty pounds.
On 1 November 2004, plaintiff underwent an MRI which revealed a disk bulge and left herniation causing "[m]oderately severe left central canal stenosis" at C4-5 and "mild left foraminal stenosis" at C3-4 as well as a large right disk herniation with foraminal and lateral recess stenosis at C6-7. Dr. McAvoy reviewed the results, and he believed the herniation at C6-7 corresponded with plaintiff's physical findings and complaints. Dr. McAvoy explained that plaintiff's disks at C4-5 and C3-4 were asymptomatic because the MRI revealed left-sided stenosis, but plaintiff's complaints were entirely right-sided, and that it is impossible to have right-sided complaints with left-sided foraminal stenosis.
On 3 December 2004, Dr. McAvoy referred plaintiff to Dr. Robert Allen ("Dr. Allen"), a neurosurgeon in Raleigh, North Carolina. Dr. McAvoy also noted that plaintiff had no significant changes in his symptoms, but plaintiff had trouble riding in a car and had been unable to work during the previous week. At that time, Dr. McAvoy wrote plaintiff out of work completely.
On 6 December 2004, by filing a Form 60, defendants acknowledged plaintiff's right to temporary total compensation from a disability resulting on 3 December 2004 from plaintiff's 20 July 2004 injury.
On 15 December 2004, plaintiff presented to Dr. Allen. Plaintiff complained of burning and pain in his right arm. Dr. Allen noted that plaintiff described "some arm and right-sided posterolateral arm pain, [which] radiates to the hand with numbness and tingling in the hand." Upon examination, Dr. Allen found that plaintiff had "significant weakness in his triceps and biceps on the right when compared to the left." Dr. Allen reviewed plaintiff's MRI scan that showed a "large central and right-sided disk herniation at C6-C7." Given the significant central component of the disk, Dr. Allen recommended an anterior diskectomy and fusion. Dr. Allen noted that plaintiff was "miserable with pain" and wrote plaintiff out of work indefinitely.
On 17 December 2004, Dr. Allen performed an anterior diskectomy and fusion at C6-7 on plaintiff, and on 11 January 2005, plaintiff returned to Dr. Allen's office for a follow-up after the surgery. Noting that the surgery had gone well and that plaintiff experienced relief of his arm pain, Dr. Allen started plaintiff on physical therapy. On 14 February 2005, Dr. Allen allowed plaintiff to return to light duty work with a thirty pound weight limit.
On 5 April 2005, Dr. Allen noted that plaintiff reported some pain in his first and second fingers on his right hand and posterior neck spasms, which Dr. Allen thought could be the result of a residual nerve root injury. Plaintiff's right triceps strength had returned to nearly normal as compared to his left triceps, and plaintiff was released to light duty work with a thirty pound lifting restriction.
On 14 June 2005, plaintiff returned to Dr. Allen. Dr. Allen testified that plaintiff had relief of his radicular arm pain and a return of strength in his right triceps, but he still experienced some residual numbness. A review of plaintiff's "follow-up x-rays showed a solid fusion." Dr. Allen further testified that he "thought [plaintiff] had recovered enough not to have a [work] restriction" by 27 June 2005.
On 6 August 2005, Dr. Allen assigned a fifteen percent permanent partial disability rating. On 29 August 2005, defendant-carrier sent a request for Dr. Allen to address in writing whether plaintiff had any permanent work restrictions, and on 7 September 2005, Dr. Allen's nurse responded with a handwritten note confirming that plaintiff did not have any restrictions. On 16 September 2005, defendants filed a Form 24 to terminate payment of compensation to plaintiff because he had been released to full-duty work. By order entered 2 November 2005, Meredith R. Henderson, Special Deputy Commissioner of the North Carolina Industrial Commission, approved defendant's application to terminate compensation effective 19 September 2005.
On 10 March 2006, plaintiff presented to Dr. Lucas J. Martinez ("Dr. Martinez") for a second opinion on the permanent partial impairment rating assigned by Dr. Allen. Dr. Martinez reviewed plaintiff's MRI from 1 November 2004 and noted plaintiff's complaints, including (1) neck pain, (2) severe headache, (3) numbness, and (4) dysesthesia in the thumb and index finger. Based upon this information, he agreed with Dr. Allen's fifteen percent permanent partial impairment rating. Dr. Martinez further noted some "questionable weakness of the right deltoid . . . and maybe even some weakness of the biceps" which, he suggested, "could be weak secondary to the C4-C5 disk." Dr. Martinez based this suggestion upon his physical examination of plaintiff on 10 March 2006 in conjunction with plaintiff's 1 November 2004 MRI. Dr. Martinez recommended an additional MRI to observe whether any progression of plaintiff's disk herniation at C4-5 had occurred since the 1 November 2004 MRI.
On 28 August 2006, plaintiff presented to Dr. Raymond Baule ("Dr. Baule") who recommended an MRI which revealed a disk herniation at C4-5, degenerative changes at C5-6, and post-surgical changes at C6-7. Based upon the MRI, Dr. Baule recommended additional surgery. On 15 November 2006, Dr. Baule performed a posterior cervical laminectomy with extension of fusion of the previous C6-7 fusion so as to also fuse C4-5 and C5-6. Dr. Baule opined that plaintiff would not need further surgery and that he reached maximum medical improvement on 14 August 2007.
In addition to the foregoing medical history, on 13 May 2005, defendants assigned Terry Lee Stacy ("Stacy") as a vocational rehabilitation professional to assist with plaintiff's search for work.
On 28 June 2005, Stacy completed a progress report in which he noted that "[plaintiff] informed me that he has been released by his doctor to return to work, but [plaintiff] was not provided with any [return to work] slip, or list of restrictions, if there are any restrictions at all." Stacy further noted that he had corresponded with Dr. Allen's office, but that Dr. Allen "has not had the opportunity of answering my letter or telephone calls." Thus, Stacy assisted plaintiff's vocational rehabilitation in view of the thirty pound weight restrictions set during plaintiff's 5 April 2005 examination with Dr. Allen.
On 5 August 2005, Stacy completed a progress report in which he noted that plaintiff "has made an initial attempt in trying to locate suitable employment, but [he] appears to be reluctant to spend a lot of his time in this effort." Stacy determined that weekly meetings with plaintiff "w[ould] be necessary in order to provide the necessary incentive and motivation to [him]." Notwithstanding, on 5 September 2005, Stacy noted that plaintiff "needs to go through a change of attitude in his search for work" and that "the extent and duration of his efforts [to secure employment] lack focus and intensity."
On 23 September 2005, Stacy filed a progress report in which he noted that he had made employer contacts for plaintiff, but plaintiff still had failed to pursue available jobs advertised by the North Carolina Employment Security Commission. After failing to use resources available to him to apply for an open position as a welder  plaintiff's line of work  Stacy noted that he had "some question about [plaintiff's] sincerety [sic] in his job search." Subsequently, on 3 November 2005, Stacy closed plaintiff's file, but he reopened it on 6 December 2005 at defendants' request.
On 14 December 2005, Stacy noted that he had arranged a job interview for plaintiff in plaintiff's hometown, and he provided plaintiff with the employer's contact information. The type of employment was different from plaintiff's prior work experience, but it did not require heavy physical labor and "represent[ed] a new start in life[] and a paycheck." On 16 January 2006, Stacy reported that plaintiff had failed to complete an employment application or arrive for the job interview Stacy had arranged for plaintiff in December 2005.
On 25 January 2006, Stacy noted that he had advised plaintiff to "clearly state to the interviewer that he wants to work and that his is willing to work." Notwithstanding, Stacy reported that, "[a]s of yet, [plaintiff] is reluctant to make a statement like this. [He] needs to change his attitude about work, make some vocational decisions in his life, and to start earning a paycheck." In a progress report dated 24 February 2006, Stacy observed that plaintiff continued to ignore Stacy's recommendations and to make statements to prospective employers that "set him up for failure."
By opinion and award entered 30 August 2006, after a hearing conducted on 16 February 2006, Deputy Commissioner Robert Rideout, Jr. ("Deputy Commissioner Rideout"), denied plaintiff's claim for ongoing disability benefits and awarded plaintiff disability benefits for a fifteen percent permanent partial impairment rating to his back subject to credits specified therein. On 1 September 2006, plaintiff appealed to the Full Commission. By opinion and award entered 24 September 2008, the Full Commission adopted Deputy Commissioner Rideout's opinion and award with minor modifications. Plaintiff appeals.
On appeal, plaintiff contends that the Full Commission erred by concluding that plaintiff failed to establish ongoing disability related to his compensable injury beyond 6 August 2005. We disagree.
Our standard of review of opinions and awards of the Full Commission is well-settled. We are to inquire "(1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005). The "Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony[;]" however, "findings of fact by the Commission may be set aside on appeal when there is a complete lack of competent evidence to support them." Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (internal citations and quotation marks omitted). The Full Commission may refuse to believe certain evidence and may accept or reject the testimony of any witness. Pitman v. Feldspar Corp., 87 N.C. App. 208, 216, 360 S.E.2d 696, 700 (1987) (citing Harrell v. Stevens & Co., 45 N.C. App. 197, 205, 262 S.E.2d 830, 835, disc. rev. denied, 300 N.C. 196, 269 S.E.2d 623 (1980)), disc. rev. denied, 321 N.C. 474, 364 S.E.2d 924 (1988). Furthermore, "[t]he Commission's findings of fact are conclusive on appeal if supported by competent evidence. This is so even if there is evidence which would support a finding to the contrary." Sanderson v. Northeast Construction Co., 77 N.C. App. 117, 121, 334 S.E.2d 392, 394 (1985) (citing Morrison v. Burlington Industries, 304 N.C. 1, 282 S.E.2d 458 (1981)). We review the Commission's conclusions of law de novo. Griggs v. Eastern Omni Constructors, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003).
Pursuant to North Carolina Workers' Compensation Act, "the term `disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2007). "The employee seeking compensation under the Act bears `the burden of proving the existence of [her] disability and its extent.'" Clark, 360 N.C. at 43, 619 S.E.2d at 493 (quoting Hendrix v. LinnC-orriher Corp., 317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986)).
In order to support a conclusion of disability, whether temporary or permanent, the Commission must find that the employee has shown:
(1) that [she] was incapable after h[er] injury of earning the same wages [s]he had earned before h[er] injury in the same employment, (2) that [s]he was incapable after h[er] injury of earning the same wages she had earned before her injury in any other employment, and (3) that [her] incapacity to earn was caused by [her] injury.
Id. (quoting Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982)).
In the case sub judice, the Full Commission concluded in relevant part that "[p]laintiff failed to prove by the greater weight of the evidence that he has an ongoing disability related to his compensable injury beyond August 6, 2005 or that he diligently sought employment."
Notwithstanding plaintiff's contention, the Full Commission based its conclusion upon findings of fact based upon (1) plaintiff's testimony; (2) Stacy's deposition testimony; (3) the deposition testimony of Drs. Allen, Baule, Martinez, and McAvoy; and (4) records, reports, and other exhibits within the record. As stated above, on 6 August 2005, Dr. Allen assigned a fifteen percent permanent partial impairment rating to plaintiff's injury. Dr. Allen based his rating upon his examination of plaintiff on 14 June 2005, during which Dr. Allen noted that x-rays demonstrated a solid fusion at C6-7 notwithstanding some residual numbness plaintiff experienced. By 27 June 2005, Dr. Allen believed plaintiff was well enough to return to work without restrictions.
Drs. Allen and McAvoy testified that plaintiff's disk abnormalities at C5-6 and C3-4 were asymptomatic and did not require treatment. Although plaintiff complained that he continued to experience pain and numbness in his right arm and hand, and notwithstanding Dr. Martinez's testimony that plaintiff's complaints, including some "questionable" muscle-weakness, were potentially consistent with a nerve injury at C4-5, Dr. McAvoy explained that it is impossible to have right-sided symptoms with a left-sided disk herniation.
After making findings addressing the foregoing evidence, the Full Commission found as fact that it "g[ave] greater weight to the opinions of plaintiff's treating physicians, Dr. Allen and Dr. McAvoy." Because the Full Commission is the sole judge of credibility of witnesses and because it may accept or reject any testimony, and because the Full Commission's findings of fact are supported by competent evidence, we affirm the Full Commission's conclusion of law as it relates to any purported ongoing injury after 6 August 2005. See Young, 353 N.C. at 230, 538 S.E.2d at 914; Pitman, 87 N.C. App. at 216, 360 S.E.2d at 700.
Furthermore, notwithstanding any miscommunication, or lack of communication, between Dr. Allen's office and Stacy concerning whether plaintiff still was under a thirty pound lifting restriction during any or all of his vocational rehabilitation efforts, Stacy's progress reports, as set forth in relevant portions, supra, provide ample support for the remainder of the Full Commission's conclusion that plaintiff did not seek employment diligently.
Accordingly, we affirm the Full Commission's conclusion that "[p]laintiff failed to prove by the greater weight of the evidence that he has an ongoing disability related to his compensable injury beyond August 6, 2005 or that he diligently sought employment."
Next, plaintiff argues that the Full Commission erred by concluding that the medical treatment provided by Dr. Baule was not compensable because it was not a direct result of plaintiff's compensable injury. We disagree.
We review the Full Commission's conclusion to determine whether it is supported by appropriate findings of fact based upon competent evidence. Clark, 360 N.C. at 43, 619 S.E.2d at 492. We reiterate that the Full Commission is the sole judge of credibility of witnesses and that it may accept or reject any testimony. See Young, 353 N.C. at 230, 538 S.E.2d at 914; Pitman, 87 N.C. App. at 216, 360 S.E.2d at 700.
Here, the Full Commission substantially based its conclusion upon its finding of fact that
Dr. Baule was not able to sufficiently relate plaintiff's 2006 surgery to his 2004 workers' compensation injury. Dr. Baule testified that it was unclear what precipitated plaintiff's herniation. Although Dr. Baule initially indicated that the surgery he performed in 2006 was related to plaintiff's 2004 injury, Dr. Baule admitted that his opinion was based on his presumption that plaintiff's disease at C4-5 did not exist at the time of the initial surgery and that his opinion was purely conjecture.
On direct examination, Dr. Baule testified:
Well[,] the surgery I performed [in 2006] is probably related to the surgery he had related to his initial injury because he developed adjacent level disease which is probably a consequence of the surgery which was required as a result of his initial injury.
On cross-examination, however, Dr. Baule admitted that his opinion was "purely conjectural" and explained that "I am presuming that [plaintiff] did not have disease at the C4-5 level at the time of his previous surgery. That's without the privilege of having previous records of his surgery and his previous scans."
Accordingly, we hold that the relevant finding of fact by the Full Commission is supported by competent evidence, and we affirm the Full Commission's conclusion of law that the medical treatment provided by Dr. Baule was not compensable because it was not a direct result of plaintiff's compensable injury.
For the foregoing reasons, we affirm the opinion and award of the Full Commission.
Affirmed.
Judges McGEE and ERVIN concur.
Report per Rule 30(e).